**CHARLES OF THE RITZ GROUP LTD. and Yves Saint Laurent Parfums Corp., Plaintiffs-Appellees,**

v.

**QUALITY KING DISTRIBUTORS, INC., Deborah International Beauty, Ltd., and Deborah Richman, Defendants-Appellants.**

No. 371, Docket 87–7623.

United States Court of Appeals, Second Circuit.

Argued Oct. 8, 1987.

Decided Nov. 3, 1987.

David S. Klafter, White and Case, New York City (Lile H. Deinard, Carole P. Sadler, of counsel), for plaintiffs-appellees.

Robert L. Sherman, Ruskin, Schlissel, Moscou, Evans & Faltischek, Mineola, N.Y., for defendant-appellant Deborah Intern. Beauty, Ltd.

Before KAUFMAN and ALTIMARI, Circuit Judges, and TENNEY, District Judge.[*]

IRVING R. KAUFMAN, Circuit Judge:

Consumed by the feud between her family and Romeo's, Juliet mused "What's in a name? That which we call a rose by any other name would smell as sweet." But Juliet could as easily have been speaking about the dispute before us on appeal. Here, the combatants are two fragrance companies: one produces a luxury perfume and the other manufactures a low-priced "smell-alike." They have been feuding over claims of trademark infringement for more than a year, and this appeal represents the latest skirmish.

The appellees, Charles of the Ritz Group Ltd. ("Charles of the Ritz"), manufactures a fragrance called Opium. One of Deborah International Beauty, Ltd.'s ("Deborah International") products, Omni, is not only similar in scent to Opium, but it also copies Opium's trade dress and includes a direct reference to Opium in a slogan appearing on a tab which rises from the top of the box.

On May 30, 1986, Charles of the Ritz filed suit in the United States District Court for the Southern District of New York, pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982), seeking a preliminary injunction against Deborah International, charging that use of similar trade dress as well as the name Opium in the slogan on the top of the Omni box was likely to cause consumer confusion.

In a decision issued June 11, 1986, Judge Weinfeld, finding a likelihood of confusion in the use of the trademark Opium in

Omni's slogan but not in the similarity of trade dress, granted a preliminary injunction against the phrase, "If you like OPIUM, you'll love OMNI." Two months later, Deborah International moved for "clarification," proposing a substitute, "If you like OPIUM, a fragrance by Yves Saint Laurent, you'll love OMNI, a fragrance by Deborah Int'l Beauty." On August 21, 1986, Judge Weinfeld rejected this suggestion in a second order. These orders were not appealed.

At issue here is a third version, "If You Like OPIUM, a fragrance by Yves Saint Laurent, You'll Love OMNI, a fragrance by Deborah Int'l Beauty. Yves Saint Laurent and Opium are not related in any manner to Deborah Int'l Beauty and Omni." This is essentially a combination of the August 1986 alternative and a disclaimer. On July 16, 1987, Judge Weinfeld agreed to enjoin use of this substitute but denied Charles of the Ritz's motion to hold appellants in contempt.

We affirm the decision below for three reasons. First, a balancing of all the factors enumerated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), most of which were considered in the court's earlier decisions, results in a finding of consumer confusion. Second, district courts must be given wide latitude in fashioning enforcement mechanisms for earlier injunctions. Third, Deborah International failed to introduce empirical evidence that the disclaimer actually lessens consumer confusion as required to overcome such a previous finding.

## I. The Products

### A. Charles of the Ritz's Opium

In 1977, Charles of the Ritz introduced the fragrance Opium, a registered trademark produced and marketed by its wholly-owned subsidiary, Yves Saint Laurent Par-

* Honorable Charles H. Tenney, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

fums Corp. The Opium line includes several related fragrance products including perfume, eau de toilette, and bath powder. Appellees claim that the best-selling product in the line, "Eau de Toilette Natural Spray," has been infringed by the appellants.

Opium products are packaged in trade dress consisting of an oblong exterior carton colored red and blue, with horizontal gold-colored stripes and "oriental flower" design. The trade dress prominently bears the mark Yves Saint Laurent. Opium's trade dress has also been registered as a trademark used in connection with fragrances.

Opium is sold nationwide to more than 1600 department and specialty stores. Opium perfume retails for over $100 an ounce, and the 1.2 ounce Opium Eau de Toilette Network Spray sells for over $37.00 at retail.

To say the least, Charles of the Ritz has been extraordinarily successful: sales have exceeded 226 million dollars. Since 1978, Charles of the Ritz has expended in excess of 25 million dollars promoting Opium by advertising in high-circulation national and fashion magazines as well as on television, through mass mailings, and by publicity appearances by the famous fashion designer Yves Saint Laurent.

### B. *Deborah International's Omni*

Deborah International is amoung the growing number of companies that duplicate the scents of higher-priced "designer" fragrances and offer them at inexpensive prices. One of its products, marketed under the unregistered mark Omni, is a "smell-alike" of Charles of the Ritz's Opium. Deborah International concedes that its marketing strategy has been to attract consumers who are either unwilling or unable to pay designer prices. Accordingly, the company has directed its efforts towards consumers who shop in "mass" markets such as drug stores, discount stores, chain stores and supermarkets. The suggested retail price for Omni (1.7 fluid ounces of eau de toilette) is $7.50.

To promote its products, Deborah International has chosen point-of-purchase displays depicting eight prominent designer fragrances, including Opium, as a backdrop to its own eight alternatives. The display's background riser, which has undergone textual modifications during the course of this litigation, currently contains a picture of Opium and a disclaimer which states, "The manufacturers, distributors and trademarks of the designer fragrances on this photograph are not related in any manner to Deborah International Beauty, Ltd.'s 'Scent Sational Scents.'"

Omni is sold in a trade dress consisting of an oblong carton, colored maroon, bearing the Omni mark, diagonal stripes and "palm leaves" in gold. In size and appearance the carton resembles appellees'.

The manner of display and the trade dress of the products provide the context for our analysis, but neither is directly implicated in this appeal. The issue on appeal involves a tab, bearing the disputed slogan, which projects out from the top of each package of Omni.

### II. *The Market*

The district court found, and the parties essentially agree, that the perfume industry consists of two markets: "designer" or "luxury" fragrances, which are generally sold in department stores and boutiques, and "discount" fragrances, which are found in discount stores, drug stores and low-end department stores. Omni is considered a "discount" fragrance. Opium, in contrast, is regarded as a "luxury" fragrance. But while Charles of the Ritz does not distribute Opium directly to "mass" market retail outlets, certain of its wholesale distributors do. Accordingly, both product lines may appear on the same retailer's counters.

### III. *Trial Court Proceedings*

The dispute between these parties has a long and tortuous history. Indeed, as we noted, the district court order considered here is the third such order issued in little more than a year. On June 11, 1986, the trial court found that Omni's original slo-

gan raised a substantial likelihood of confusion regarding the source of the product. *Charles of the Ritz Group, Ltd. v. Quality King Distributors, Inc.*, 636 F.Supp. 433 (S.D.N.Y.1986) (hereinafter "first order"). Moreover, the court rejected a disclaimer, hidden inside the box, which stated, "Opium is a Registered Trademark Parfum and is not related in any manner with Deborah International Beauty, Ltd." The court noted that the placement "suggests a calculated effort by defendant to escape liability for infringement." As a result, Deborah International was enjoined from using the tab.

The court found, on the trade dress issue, "substantial and significant" differences between the two: the leaves depicted on the Omni box are bamboo or palm, and differ in shape, size, and configuration from Charles of the Ritz's registered trademark "Oriental Flower Design." As for the color pattern of the Opium package, which Charles of the Ritz also claims as part of its package design trademark, the court found them distinct: the Opium package is predominantly rust red, with top and bottom areas colored dark blue; the Omni package is predominantly maroon. Because the court held the trade dress was dissimilar, the use of a photograph of Opium on the display was also found to cause no additional confusion.

Shortly thereafter, Deborah International moved for "clarification" of the first order. It proposed a new phrase for the tab, "If You Like OPIUM, a fragrance by Yves Saint Laurent, You'll Love OMNI, a fragrance by Deborah Int'l Beauty," and suggested, in the alternative, a slogan using the words "product of" instead of the words "fragrance by." The court rejected the modified slogan (hereinafter "second order"), noting that it left the relationship between the companies and trademarks completely ambiguous.

The third order resulted from Charles of the Ritz's motion to hold Deborah International in contempt for use of the combined slogan and disclaimer or, in the alternative, to enjoin it from using the new tab. *Charles of the Ritz Group, Ltd. v. Quality King Distributors, Inc.*, 664 F.Supp. 152, 156 (S.D.N.Y.1987). Finding insufficient evidence to hold Deborah International in contempt, Judge Weinfeld nonetheless enjoined the new slogan on the grounds that it was inadequate to obviate consumer confusion between the fragrances. The court noted that the tab reserves its largest type size for the words Opium and Omni while the disclaimer is in smaller print. In addition, the evidence demonstrated that the manner of display—in one drugstore, the tab and box of Omni were placed on a shelf slightly above eye level—made it impossible for a consumer to read the disclaimer, which appears at the bottom of the tab. Finally, the court found the disclaimer inadequate because it failed to indicate that Opium and Omni are competing products.

## IV. *Discussion*

Deborah International contends that the district court erred by: 1) failing to apply the proper balancing test in finding a likelihood of confusion, 2) abusing its discretion by ordering an injunction in the absence of a factual finding, 3) violating first amendment rights, and 4) insufficiently considering the impact of the proposed disclaimer in mitigating consumer confusion. We consider each contention in turn.

## A.

A district court has broad discretion to issue a preliminary injunction once it has been established that:

> both possible irreparable injury and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make a fair ground for litigation and a balance of hardships tipping in the movant's favor.

*Stormy Clime, Ltd. v. Progroup, Inc.*, 809 F.2d 971, 973 (2d Cir.1987) (quoting *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 76 (2d Cir.1985)); *Kaplan v. Board of Education*, 759 F.2d 256, 259 (2d Cir.1985). An appellate court may not disturb a preliminary injunction unless it finds, in light of applicable legal standards, that the district court abused its discretion. *Lobo Enterprises, Inc. v. Tunnel, Inc.*, 822 F.2d 331,

333 (2d Cir.1987). Failure to consider or apply the proper legal test constitutes such an abuse. *See Coca–Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 315 (2d Cir.1982). Thus, we must determine whether the lower court employed the appropriate legal rule in its decision.

Here, to prevail on its claim, Charles of the Ritz had to show a "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978) (*per curiam* ), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). This showing also establishes the requisite risk of irreparable harm. *Standard & Poor's Corp. v. Commodity Exchange, Inc.,* 683 F.2d 704, 708 (2d Cir. 1982).

Judge Friendly elucidated the "likelihood of confusion" standard in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d at 495. He delineated eight factors that must be balanced:

> Where the products are different, the prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

*See also Thompson Medical Company Co. Inc. v. Pfizer, Inc.,* 753 F.2d 208, 213–14 (2d Cir.1985). Deborah International challenges the district court's application of the *Polaroid* formula. The court's opinion in the third order was indeed limited to evidence of "actual confusion." Specifically, the court noted the disparity in type size between the slogan and the disclaimer, evidence that the disclaimer could not be seen by customers in one store, and the failure of the disclaimer to indicate that the two companies are competitors. The opening paragraph of the opinion, however, refers to the court's prior decisions in this case,

thus implicitly incorporating the findings previously entered by the court. With an eye to the corpus of opinions from the district court, then, we review *de novo* its legal conclusion. *Plus Products v. Plus Discount Foods, Inc.,* 722 F.2d 999, 1004–05 (2d Cir.1983). In doing so, the various *Polaroid* factors must be considered.

### 1. *Strength of the Mark*

The first contributing element refers to the mark's distinctiveness, "or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *McGregor–Doniger, Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979). The evidence shows that Opium is a strong mark both by definition and when placed in its market context. The name Opium and the Opium trade dress are arbitrary marks, rather than generic or descriptive, and thus are among the strongest and most highly protected class of trademarks. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976). In addition, the commercial success of the Opium name reinforces the strength of the mark. *Plus Products v. Plus Discount Foods, Inc.,* 722 F.2d at 1005. *See also Harlequin Enterprises Ltd. v. Gulf & Western Corp.,* 644 F.2d 946, 949 (2d Cir.1981). As demonstrated by its sales success and advertising expenditures, Opium is a highly profitable endeavor. Just in the past year, Charles of the Ritz has extensively promoted and advertised their Opium products in an amount of approximately 4 million dollars, and the ever-increasing volume of sales proves that its efforts are successful. The district court recognized this, stating in its first opinion that "[p]laintiffs have expended considerable sums of money in advertising and otherwise promoting their Opium products."

### 2. *Degree of Similarity*

Because Deborah International used the trademark Opium, while simultaneously mimicking Opium's trade dress and scent, there is clear similarity here, as Judge Weinfeld duly noted in all his opinions.

### 3. Proximity

Proximity is a closer question than similarity. The concern here is whether "it is likely that consumers mistakenly will assume either that [the junior user's goods] are associated with [the senior user] or are made by [the senior user]." *Lois Sportswear U.S.A., Inc. v. Levi Strauss Co.*, 799 F.2d 867, 874 (2d Cir.1986). The district court, in its first order, noted that "although plaintiffs do not distribute Opium products directly to ["mass market"] retail outlets, certain of their wholesale distributors do, and accordingly the two products may be found on the same merchandiser's counters." Appellants respond that designer fragrances like Opium are placed in display cases and must be asked for by name, while Omni is out on the counter. It is true that in *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d at 1008, this court discounted any danger from proximity where two products could both be found in supermarkets, because the products did not appear in the same stores. But here the record indicates that the two products can be found in the same stores. Given this proximity, differences in methods of display do not eliminate "the likelihood that customers may be confused as to the *source* of the products, rather than as to the products themselves." *McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d at 1134; *Springs Mills v. Ultracashmere House, Ltd.*, 689 F.2d 1127, 1133–34 (2d Cir.1982).

### 4. Bridging the Gap

The issue here is whether the two companies are likely to compete directly in the same market. Thus far, Charles of the Ritz has made no effort to enter the "mass" market, as distinguished from the "luxury" market it currently occupies. It should be noted that some question remains whether two distinct fragrance markets actually exist. *Cf. Lobo Enterprises v. Tunnel, Inc.*, 822 F.2d at 333–34. We need not decide that at this time since the barrier between the two is sufficiently porous to allow Charles of the Ritz passage with little difficulty.

### 5. Actual Confusion

The evidence presented in the district court substantiates Judge Weinfeld's finding of actual consumer confusion between Opium and Omni. In seeking the first order, appellees presented the results of a survey wherein consumers who had been randomly selected at a shopping mall were shown extremely brief glimpses of packages of fragrance products using a shadow-box. Appellees reported that, in a sample of thirty-five consumers, 34% misidentified a package of Omni as one of Opium. The survey, however, used boxes of Omni with the first slogan. In seeking the third order, Charles of the Ritz offered evidence that the display was positioned in one drugstore so that a perfume consumer of average height (5'4") could not read the disclaimer. This, coupled with Judge Weinfeld's observation that the tab still reserves its largest type for the words Opium and Omni, supports the inference that the survey results remain as relevant now as they were in the first injunction. While the focus in determining the likelihood of confusion must be on market conditions instead of in-chambers inspections, *Calvin Klein Cosmetics Corp. v. Lenox Laboratories Inc.*, 815 F.2d 500, 504 (8th Cir.1987), the combination of visual inspection and empirical evidence suffices to find "actual confusion" in this case.

### 6. Good Faith

Appellants were aware of Opium and, indeed, intentionally adopted the overall image, style, and appearance of Opium and its registered trade dress. This court has held that evidence of intentional copying raises a presumption that the second comer intended to create a confusing similarity. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir.1987). Although this factor alone is not dispositive, it bolsters a finding of consumer confusion. *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1227 (2d Cir.1987).

### 7. Quality of Products

The last two *Polaroid* factors lend some support to Deborah International's conten-

tion. As appellees indicate in their brief, Deborah International has repeatedly denied any claim that its Omni products are equivalent to Opium products. Rather, the great disparity in price between the two demonstrates conclusively that Omni is an inexpensive, low-quality product. This marked difference in quality lessens the likelihood of consumers' misapprehending the source of either product. *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 967 (2d Cir.1981); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).

### 8. *Sophistication of Buyers*

Charles of the Ritz sells to consumers who spend in excess of $100.00 for an ounce of perfume and nearly half that for cologne and eau de toilette. The substantial price requires buyers to exercise care before they part with their money, and such sophistication generally militates against a finding of a likelihood of confusion. *See Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 489 (1st Cir.1981).

\* \* \* \* \* \*

Upon review of its findings on the principles of *Polaroid*, we share the district court's legal conclusion that there existed a likelihood of confusion as to the source of Omni. While the sophistication of perfume buyers and the wide disparity in quality and price mitigate against any consumer confusion, the other factors overwhelmingly override these concerns. The Opium trade mark is a strong one; the products are both similar and proximate to one another; there is ample evidence of actual confusion on the record; and appellants did not show good faith in copying the trade dress and in using the name Opium in their slogan.

■ Moreover, although the district court failed to enumerate all the *Polaroid* factors in its latest opinion, it addressed them adequately in its three opinions. We reject appellants' contention that the district court must jump through the *Polaroid* hoops every time it considers compliance

with an earlier order. Each of the successive orders entered in the district court built upon the analysis of its predecessors. For example, the opening paragraph of the second order quoted the first order and its supporting opinion, "familiarity with which is assumed." In clarifying the first order, as requested by Deborah International, the court ruled that the "[proposed] new slogans are *similarly* likely to mislead or confuse a substantial number of ordinarily prudent purchasers as to the source of the defendants' product." (emphasis added) The word "similarly" referred back to the court's analysis, findings and conclusions in its June 11, 1986 opinion. Finally, the opening paragraph of the third order alluded to the prior decisions and also fashioned its conclusion upon the analysis entered by the court. Thus, in the third order, the court simply made "crystal clear" the requirements for defendants to comply with the first order.

### B.

Appellants next contend that even if we accept the district court's finding of a likelihood of confusion, we should nevertheless reverse because the district court abused its discretion by granting the preliminary injunction in the absence of factual support, by violating appellants' first amendment rights, and by failing to consider the impact of the disclaimer in mitigating consumer confusion. These claims are without merit.

■ The third order, contrary to appellants' contention, is grounded in solid factual support. As already indicated, the combination of visual inspection, affidavits, and implicit incorporation of earlier evidence is more than ample. Moreover, testimony indicating that consumers of average height would not be able to see the disclaimer illustrates that Deborah International was essentially presenting the same slogan rejected by the court in August 1986. It is no wonder then that the district court judge commented that "defendants appear to be attempting to reap the benefits of consumer confusion while attaining the most minimal, technical compliance with

the law possible." The trial judge must be accorded great deference in fashioning enforcement remedies where, as here, there is a substantial indication of bad faith on the part of the infringer. *Hutto v. Finney,* 437 U.S. 678, 687 & n. 9, 98 S.Ct. 2565, 2571 & n. 9, 57 L.Ed.2d 522 (1978).

■ As for appellants' first amendment claim, "[m]isleading commercial speach is beyond the protective reach of the First Amendment." *Vidal Sassoon, Inc. v. Bristol–Myers Co.,* 661 F.2d 272, 276 n. 8 (2d Cir.1981). In this case, defendant openly concedes that it makes "no equivalency or superiority claims." It follows, then, that where a defendant neither asserts nor relies upon the truth of its infringing slogan, the first amendment does not provide protection.

Finally, appellants claim that the district court failed to consider the effect of its proposed disclaimer in alleviating any confusion. Recently, the Second Circuit has squarely addressed the value of disclaimers as a cure for an otherwise infringing slogan. In *Home Box Office, Inc. v. Showtime/The Movie Channel Inc.,* 832 F.2d 1311 (2d Cir.1987), this court considered and rejected appellants' claim that disclaimers are a favored way of alleviating substantial consumer confusion. In that case, the district court had enjoined Showtime from using its slogans unless they were accompanied by disclaimers adequate to avoid confusing consumers. The Second Circuit reversed that portion of the order which accepted the disclaimers, holding that the infringer has an affirmative duty to come forward with "evidence sufficient to demonstrate that any proposed material would significantly reduce the likelihood of consumer confusion." *Id.* at 1316. Showtime had not met this burden. Similarly, Deborah International has failed to come forth with any evidence whatsoever to support its contention that the disclaimer would reduce consumer confusion.

A growing body of academic literature has concluded that disclaimers, especially those similar to the disclaimer here, which employ brief negator words such as "no"

or "not," are generally ineffective. *See, e.g.,* Jacoby & Raskoff, *Disclaimers as a Remedy for Trademark Infringement Litigation: More Trouble Than They Are Worth?,* 76 Trademark Rept. 35, 54 (1986). *See also,* Radin, *Disclaimers as a Remedy for Trademark Infringement: Inadequacies and Alternatives,* 76 Trademark Rept. 59 (1986), 2 H. Nims, *Unfair Competition and Trademarks* §§ 366f, 379a (4th ed. 1947). Disclaimers can often prevent consumer confusion. *See Soltex Polymer Corporation v. Fortex Industries, Inc.,* 832 F.2d 1325 (2d Cir.1987) (minimum to moderate amount of consumer confusion found by district court could be cured effectively by the use of a disclaimer). In this case of substantial confusion, however, the district court judge was well within his discretion in requiring that the disclaimer be prominent and also indicate that the two companies were competitors, rather than allowing the current ambiguous wording "not related to."

### Conclusion

We affirm the district court's issuance of a preliminary injunction.

ALTIMARI, Circuit Judge, concurring:

I concur in the majority's thoughtful opinion affirming the decision of the district court which denied disclaimer relief. I write separately only because, in reaching this result, the majority relies in part on Deborah International's failure to introduce empirical evidence that the proposed disclaimer actually would lessen consumer confusion.

As the majority properly concludes, the district court was within its discretion to decline to accept what it felt was an ambiguous disclaimer. The district court clearly was dissatisfied with Deborah International's subsequent attempts to cure the ambiguity of the phrase, "If you like OPIUM, you'll love OMNI." In the district court's judgment, nothing short of an obvious indication of the competitive relationship of the parties would suffice. Although this may appear to be a somewhat overly restrictive

approach to the use of a disclaimer, I agree that the district court did not abuse its discretion in enjoining the use of the trademark OPIUM.

I am concerned, however, that district courts in this circuit faced with the task of considering disclaimer relief in trademark infringement cases may feel compelled by the majority's opinion to require empirical evidence of the effectiveness of a proposed disclaimer in alleviating consumer confusion. If that is what the majority intends, they will have created a *per se* rule which, in my judgment, represents a departure from this court's *Polaroid* decisions in which we simply have recognized that disclaimers are appropriate "when they are sufficient to avoid substantially the risk of consumer confusion." *Home Box Office, Inc. v. Showtime/The Movie Channel Inc.,* 832 F.2d 1311, 1315 (2d Cir.1987). (citations omitted) I believe that requiring empirical evidence regarding the effectiveness of a proposed disclaimer overemphasizes the importance of such evidence and unnecessarily infringes upon the wide range of discretion we have accorded district courts in our *Polaroid* decisions. *Cf. Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1230 (2d Cir.1987) (Sprizzo, J., concurring) (proper resolution of trademark infringement cases will not be "aided or enhanced by encouraging district court judges to perceive their function in [a] mechanistic fashion"); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 872 (2d Cir.1986) (eschewing "rigid formula" approach in trademark infringement actions).

Nevertheless, because I agree with the majority's conclusion that the district court did not abuse its discretion in issuing the preliminary injunction, I concur.