Ross Cosmetics Distribution Centers, Inc., plaintiff *v.* United States, defendant

Court No. 91-12-00866

(Decided August 10, 1993)

*Neville, Peterson & Williams (John M. Peterson, Peter J. Allen)* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Mark S. Sochaczewsky),* Sheryl A. French, United States Customs Service, of counsel, for defendant.

## Memorandum Opinion and Order

DiCarlo, *Chief Judge:* Plaintiff, Ross Cosmetics Distribution Centers, Inc., is a manufacturer, importer and distributor of cosmetics, toiletries and related products. Plaintiff seeks the court's review of the Customs Service Headquarters Ruling 451142 (Ruling) which determined plaintiff's proposed labels and packages of certain cosmetic products constitute counterfeit use of trademarks prohibited under 19 U.S.C. § 1526 (1988). At issue is whether the Ruling was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The court has jurisdiction pursuant to 28 U.S.C. § 1581(h) (1988).

### Background

Plaintiff requested Customs' ruling, pursuant to 19 C.F.R. part 177 (1992), on whether its proposed packages for imported bath oils and proposed labels for fragrance oils comply with the laws relating to the use of trademarks. Plaintiff's proposed label on fragrance oil bottles bears the following:

Compare to [famous brand name]
You Will Switch To
PERFUMERS PRIDE
Pure Fragrance Oil #80
0.5 Fl. Oz./15 Ml
OUR FRAGRANCE IS IN NO MANNER
ASSOCIATED WITH OR LICENSED
BY THE MAKERS OF [famous brand name]

By using this language, plaintiff intends to compare its own brand "Perfumers Pride" with better-known, more expensive fragrances. The record is unclear what names plaintiff intends to use as famous brand names.

Plaintiff's proposed packages for bath oils bear the following language at the top of the front panel of the box:

COMPARE TO
[famous brand name]
YOU WILL SWITCH TO
[plaintiff's product name]

The following disclaimer is printed at the bottom of the same side of the box.

OUR PRODUCT IS IN NO MANNER
ASSOCIATED WITH OR LICENSED BY
THE MAKERS OF [famous brand name]

Plaintiff intends to use the following names on the packages of bath oils to promote its products as alternatives to higher priced famous brands:

| Famous Brand Names | Plaintiff's "Alternative Brand" Names |
| --- | --- |
| Youth Dew | Morning Dream |
| Giorgio | Gorgeous |
| Opium | Oblivion |
| Ombre Rose | Whisper |
| Oscar | Oscent |
| L'Air du Temps | Love Birds |

"Youth Dew," "Giorgio" and "Opium," are registered with the United States Patent and Trademark Office (Trademark Office) as trademarks. These names are also recorded with Customs pursuant to 19 C.F.R. part 133 (1992). The other three brand names are not recorded with Customs, and the record is silent whether they are registered with the Trademark Office.

With respect to the registered and recorded trademarks, Customs ruled that their use on plaintiff's proposed labels and packages would be a counterfeit use of trademarks and, if imported, would be subject to seizure for violation of 19 U.S.C. § 1526(e). For other marks, the Ruling stated that Customs cannot issue a binding ruling on the goods bearing the marks not recorded with Customs. However, it went on to state they may be seized for violation of 18 U.S.C. § 2320 (1988) if those marks are registered with the Trademark Office.

Plaintiff moves pursuant to Rule 56.1 of the Rules of this court for the review upon agency record and seeks the declaratory judgment that the Ruling is not in accordance with law.

## DISCUSSION

Customs' determination is set aside when the court finds the agency action to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 28 U.S.C. § 2640(d) (1988); 5 U.S.C. § 706(2)(A) (1988). "To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971) (citations omitted).

## I. THE MARKS RECORDED WITH CUSTOMS

Three of the marks plaintiff proposes to use on the packages of its products, "Youth Dew," "Giorgio" and "Opium," are registered with the Trademark Office and recorded with Customs. With respect to these

marks, Customs ruled that "the proposed labels would be a counterfeit use of the registered and recorded trademarks, and, if imported would be subject to seizure for violation of 19 U.S.C. 1526(e)." Ruling at 4.

Plaintiff maintains that the use of competitor's trademarks is permissible as comparative advertisement. It argues that the use does not constitute a violation of trademark protection if done in a truthful, non-confusing manner. *See Smith v. Chanel, Inc.,* 402 F.2d 562, 565–66 (9th Cir. 1968) ("use of another's trademark to identify the trademark owner's product in comparative advertising is not prohibited by either statutory or common law, absent misrepresentation regarding the products or confusion as to their source of sponsorship").

A. *Whether the marks are counterfeits:*

Section 1526 of Title 19 of the United States Code provides, *inter alia:*

> (a) [I]t shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise * * * bears a trademark owned by a citizen of, or by a corporation or association created or organized within, the United States, and registered in the Patent and Trademark Office by a person domiciled in the United States * * * and if a copy of the certificate of registration of such trade-mark is filed with the Secretary of the Treasury * * *.

> &ast;   &ast;   &ast;   &ast;   &ast;   &ast;   &ast;

> (e) Any such merchandise bearing a counterfeit mark (within the meaning of section 1127 of Title 15) imported into the United States in violation of the provision of section 1124 of Title 15, shall be seized and, in the absence of the written consent of the trademark owner, forfeited for violations of the customs laws * * *.

Section 1127 of Title 15 of the United States Code provides the definition of "counterfeit":

> A "counterfeit" is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.

In order to exercise its seizure authority pursuant to 19 U.S.C. § 1526 (e), Customs must determine that the merchandise is a counterfeit.

In this case, Customs made no such finding. Instead, defendant's counsel states:

> Customs appears to have assumed from [plaintiff]'s ruling request that the points [plaintiff] now raises in its brief were not disputed. There is nothing in the record to indicate that there was any disagreement that the famous trademarks were spuriously applied (*i.e.,* without the permission of the trademark owner), or that the marks used were not identical or substantially indistinguishable from the recorded marks.

Def's Br. at 8.

Customs' assumption is unreasonable. Nothing in plaintiff's ruling request concedes that the registered trademarks were counterfeits, ex-

posing itself to possible liabilities for violation of § 1526. Plaintiff does not claim that the marks are used with the permission of the trademark owners. However, 15 U.S.C. § 1127 defines as counterfeit "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." Customs must make a finding that plaintiff's labels and packages are either identical with or substantially indistinguishable from registered marks in order to conclude that they are counterfeits. Nothing in the record indicates Customs made such findings.

B. *Whether the proposed packages are likely to cause confusion:*

To consider whether plaintiff's proposed packages conform with laws and regulations protecting trademarks, Customs must also consider whether plaintiff's packages are likely to cause confusion to the public. Section 1124 of Title 15 of the United States Code provides, *inter alia:*

> [N]o article of imported merchandise which shall copy or simulate the name of the [sic] any domestic manufacture, or manufacturer, or trader, * * * shall be admitted to entry at any customhouse of the United States * * *.

Customs' regulation defines copying or simulating marks.

> Articles of foreign or domestic manufacture bearing a mark or name copying or simulating a recorded trademark or trade name shall be denied entry and are subject to forfeiture as prohibited importations. A "copying or simulating" mark or name is an actual counterfeit of the recorded mark or name or is one which so resembles it as to be *likely to cause the public to associate the copying or simulating mark with the recorded mark or name.*

19 C.F.R. § 133.21(a) (1992) (emphasis added).

Defendant maintains that the likelihood of confusion is evident when the proposed packages are compared with the facsimile copies of the recorded marks. The administrative record contains the information recorded with Customs by trademark holders pursuant to 19 C.F.R. part 133. The cover sheet of the recordation describes the subject of the trademark being recorded, effective date, expiration date, the owner of the trademark, the purpose of the recordation, etc. The recordation incorporates the certified facsimile copy of the trademark in the principal registry of the Trademark Office. With respect to the trademark "Giorgio," the record provides the black and white copy of the crest design of the trademark and states that it uses yellow and white stripe design. *See* R. Docs. 7, 10, 11, 19 & 21. For "Opium" and "Youth Dew", however, the record contains the names only which appear on the register of the Trademark Office. *See* R. Docs. 4 & 5. The record does not contain any design of the marks or the colors of these two trademarks. Plaintiff provided color copies of the packages which contained the design, color and wording it intends to use.

Defendant conceded during the oral argument that the mere use of the names registered as trademarks in and of itself is not considered a violation of trademark protection. For example, the use of the word

"opium" is not a violation of trademark protection unless the use is likely to cause confusion in the context it is used. The issue of likelihood of confusion "depends upon a consideration of the facts and circumstances in each case." *Plus Prods. v. Plus Discount Foods, Inc.,* 722 F.2d 999, 1003 (2d Cir. 1983) (citation omitted).

The court finds it arbitrary and capricious for Customs to determine that the proposed packages are likely to be confused with registered trademarks based on the materials in the record. Customs had the color copies of plaintiff's proposed packages on one hand, and, on the other hand, the name "Opium" or "Youth Dew" printed in ordinary typeface on the registration of the Trademark Office. Customs failed to provide any reasonable analysis or explanation to support its conclusion that the likelihood of confusion is evident. To make a determination, plaintiff's proposed packages should be compared with the actual packages bearing the registered trademarks or reasonable reproduction representing the design and color of the trademarks.

Customs appears to have confined itself to the comparison of plaintiff's proposed packages with the information available with the recordation without obtaining the articles bearing the registered trademarks. However, such restricted comparison has been denied as being too narrow. *See Montres Rolex, S.A. v. Snyder,* 718 F.2d 524, 532 (2d Cir. 1983), *cert. denied sub nom, Grand Jewels, Inc. v. Montres Rolex, S.A.,* 465 U.S. 1100 (1984). In *Montres Rolex,* Customs argued that § 1526(e) requires it to protect only a "registered" mark as appeared on the registration of the Trademark Office. The court upheld the trial court's decision to compare the designs on the counterfeiting goods with the mark as it appears on the actual merchandise. The court reasoned that "just as the protected mark on actual merchandise is unlikely to be identical with the two-dimensional facsimile of the mark recorded on the registration certificate, so, too, an infringing mark would be unlikely to be substantially indistinguishable from that facsimile." *Id.*

Defendant speculates that "nothing in the record indicates that Customs did not review exemplars in connection with the Ruling or were not familiar with exemplars of the famous marks." Def's Br. at 15. However, in the absence of any proof in the record that Customs did in fact compare plaintiff's proposed labels with the actual merchandise bearing the famous trademarks, the court is unable to review "whether the decision was based on a consideration of the relevant factors." *Overton Park,* 401 U.S. at 416.

Similarly, Customs' conclusion with respect to the adequacy of disclaimer is arbitrary. Plaintiff proposes to print a disclaimer at the bottom of the package stating "OUR PRODUCT IS IN NO MANNER ASSOCIATED WITH OR LICENSED BY THE MAKERS OF [registered name]." Customs determined that the disclaimer language is inadequate to remove the likelihood of confusion.

Customs relied on *Charles of the Ritz Group Ltd. v. Quality King Distributors, Inc.,* 832 F.2d 1317, 1324 (2d Cir. 1987), for the proposition

that "disclaimers which employ brief negator words such as 'no' or 'not' are generally considered ineffective." Ruling at 3. Whether plaintiff's disclaimer is sufficient to counter the likelihood of confusion must also be determined in the context of the entire package. Such determination cannot be made without comparing plaintiff's proposed packages with the actual packages bearing registered trademarks or reasonable reproduction representing the design and color of the trademarks. Customs determination that the disclaimer is inadequate is arbitrary in the absence of any indication that it actually compared the packages and found the public is likely to be confused.

The finding that the proposed packages are likely to cause confusion was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law when they were merely compared with the facsimile copies of the registration of the Trademark Office.

## C. *The party bearing the burden of proof:*

Defendant claims that Customs' Ruling should be upheld arguing plaintiff failed to show that its proposed packages are not likely to cause confusion among consumers. In asserting plaintiff has the burden of disproving the likelihood of confusion, defendant relies on the holdings of *Charles of the Ritz,* 832 F.2d 1317, and *Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.,* 832 F.2d 1311 (2d Cir. 1987). However, these actions were brought by trademark holders to enforce trademark protection. Hence the plaintiffs in those cases had burden of proving the likelihood of confusion. The case at bar is distinguishable because it is brought by an importer who seeks to use certain trademarks in comparative advertisement. The holdings of *Charles of the Ritz* and *Home Box Office* do not answer the question whether plaintiff must disprove the likelihood of confusion to prevail before Customs.

Pursuant to 19 C.F.R. part 177, an importer may obtain Customs' ruling with respect to prospective transactions so that "commercial importers can import their products with some certainty regarding Customs treatment of their importation." T.D. 89–74, 23 Cust. B. & Dec. 352 (1989). The regulation specifically requires the request be accompanied by "photographs, drawings, or other pictorial representations of the article and, whenever possible, by a sample article * * *." 19 C.F.R. § 177.2(b)(3) (1992). Plaintiff submitted color copies of the proposed packages with its request for the Ruling. R. Doc. 1a, Ex. A. The request appears to conform the requirement set out under 19 C.F.R. § 177.2.

There is no record that Customs requested any additional information from plaintiff. Instead, Customs merely reached the information recorded by trademark holders, *i.e.,* the facsimile copies of the registration of the Trademark Office. As discussed above, the court finds the information recorded with Customs insufficient to make a proper determination in this proceeding. Under these circumstances, the court finds that Customs did not make sufficient effort to obtain enough information to make its ruling.

In addition, the court notes that Customs' own regulation states:

> The Customs Service will endeavor to issue a ruling letter setting forth a determination with respect to a specifically described Customs transaction whenever a request for such a ruling is submitted in accordance with the provisions of this part and it is in the sound administration of the Customs and related laws to do so.

19 C.F.R. § 177.8(a)(1) (1992). Under the circumstances of this proceeding, Customs should have requested more information so that it would be able to issue a ruling based on relevant factors. The issuance of the ruling without sufficient factual basis is arbitrary and capricious.

Since Customs made a clear error of judgment and the Ruling is not based on a consideration of the relevant findings of facts, the court holds that the Ruling was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## II. THE MARKS NOT RECORDED WITH CUSTOMS

Three of the marks plaintiff intends to use, namely, "Ombre Rose," "Oscar" and "L'Air du Temps," are not recorded with Customs. Customs stated it "cannot issue a binding ruling as to [these] trademarks absent proof of registration with the United States Patent and Trademark Office." Ruling at 2. However, in its conclusion the Ruling stated if these marks are registered with the Trademark Office, "articles bearing counterfeit marks *may* be subject to seizure pursuant to 19 U.S.C. 1595a(c) for violation of 18 U.S.C. 2320." Ruling at 4 (emphasis added). The issue is whether Customs' refusal to provide a ruling with respect to non-recorded marks was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Customs has power for civil seizure under 1595a(c), which provides:

> Any merchandise that is introduced or attempted to be introduced into the United States contrary to law * * * may be seized and forfeited.

Section 2320 of Title 18 provides, *inter alia:*

> (a) Whoever intentionally traffics or attempts to traffic in goods or services and *knowingly uses a counterfeit mark* on or in connection with such goods or services shall, if an individual, be fined not more than $250,000 or imprisoned not more than five years, or both, and, if a person other than an individual, be fined not more than $1,000,000 * * *.
>
> (b) Upon a determination by a preponderance of the evidence that any articles in the possession of a defendant in a prosecution under this section bear counterfeit marks, the United States may obtain an order for the destruction of such articles.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(d) For the purposes of this section—

(1) The term "counterfeit mark" means—

(A) a spurious mark—

(i) that is used in connection with trafficking in goods or services;

(ii) that is identical with, or substantially indistinguishable from a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and

(iii) the use of which is likely to cause confusion, to cause mistake, or to deceive * * *.

18 U.S.C. § 2320.

Plaintiff challenges Customs' authority to invoke its seizure power under § 1595a(c) on the basis of 18 U.S.C. § 2320, a criminal statute. According to plaintiff, the recordation with Customs is the prerequisite for exercising Customs authority under both § 1526(e) and § 1595a(c). Plaintiff argues since Customs would not be able to obtain the information to enforce trademark law without proper recordation, it is without authority to seize the merchandise which is in violation of 18 U.S.C. § 2320.

In general, Customs has been part of the government's efforts to enforce § 2320. *See, e.g., United States v. Kim,* 963 F.2d 65 (5th Cir. 1992) (Customs agents searched residences where their owners were observed selling counterfeit bags); *United States v. Hon,* 904 F.2d 803 (2d Cir. 1990), *cert. denied,* 498 U.S. 1069 (1991) (Customs' undercover agent made contact with defendants who sold counterfeit watches). In construing 18 U.S.C. § 2320, Customs stated "[t]he criminal counterfeit trafficking statute (18 U.S.C. 2320) does not require that the counterfeited trademark be recorded with U.S. Customs as a prerequisite for the offense." Customs Directive 2310–08 at 3 (Jan. 16, 1990). Customs may seize merchandise "if there is probable cause to believe that the goods are evidence of a crime (*e.g.,* 18 U.S.C. 2320) or subject to forfeiture under customs laws." *Id.* Since trademark registry is public information, *see* 15 U.S.C. § 1051 (1988) (registration of trademarks); 15 U.S.C. § 1062 (1988) (publication of trademark registration), it does not make sense to curtail Customs' authority merely because the marks are not recorded with Customs. Customs is able to find out what marks are registered from the principal registry of the Trademark Office. The trademark holder's failure to record certain marks with Customs does not deprive Customs of its enforcement power under § 2320.

In this case, however, Customs claims it is unable to issue a ruling in the absence of the proof of the registration with the Trademark Office. Presumably, Customs should be able to obtain the information as it would when enforcing § 2320. Absent the recordation, the court believes that Customs may obtain necessary information from the principal registry of the Trademark Office. In the alternative, Customs could request

plaintiff to provide relevant information including the registration information of the marks with the Trademark Office and actual packages bearing such trademarks, if necessary. If Customs does not follow these procedures, Customs should provide an explanation as to why it did not do so. The court will, then, examine whether Customs' failure to issue a ruling with respect to non-recorded marks is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

CONCLUSION

This action having been submitted for decision and upon due deliberation, it is hereby

ORDERED that the Ruling is remanded to Customs to reconsider whether the marks recorded with Customs comply with laws and regulations protecting trademarks; it is further

ORDERED that the Ruling is remanded to Customs to investigate whether the remaining marks are registered with the Trademark Office, or, in the alternative, to provide an explanation as to why it did not do so; and it is further

ORDERED that Customs shall file its remand determination within 45 days from the date of this opinion.