**DEP CORPORATION, Plaintiff,**

**v.**

**OPTI-RAY, INC., Defendant.**

**No. CV 90–5787–RMT(Sx).**

United States District Court,
C.D. California.

May 9, 1991.

Ronald W. Reagin, Stanley W. Sokoloff, Blakely, Sokoloff, Taylor & Zafman, Los Angeles, Cal., for plaintiff.

David W. Grace, Louis A. Mok, Spensley Horn Jubas & Lubitz, Los Angeles, Cal., for defendant.

### MEMORANDUM

TAKASUGI, District Judge.

#### I.

#### FACTUAL SUMMARY

Plaintiff Dep Corporation ("Dep") is a manufacturer of personal care products,

including hair care, skin care, oral hygiene, and health related products. Dep adopted and began using the mark "L.A. LOOKS" for use in connection with hair products in September, 1987. Dep filed an application for U.S. trademark registration of the mark on January 15, 1988, and the registration issued on August 22, 1989. In 1988, the first full year of production, the total sales figures for the L.A. LOOKS product line amounted to $2,260,000.00. In 1989, the sales figures for the L.A. LOOKS product line amounted to $11,695,000.00, and in 1990, the total sales figures exceeded $22,-400,000.00.

Dep decided to expand its product line under the marks in such merchandising lines as fragrances, skin care, hair notions and sunglasses, all of which are considered to be mass merchandising items sold through food, drug and mass merchandising trade channels.

At the 1990 National Association of Chain Drug Stores ("NACDS") industry convention held in Palm Beach, Florida, on April 21–25, 1990, Robert Berglass, the President of Dep, and Jerry Alpin, the Senior Vice President of Sales and Marketing of Dep, spoke with various manufacturers of mass merchandising items with respect to their plans to expand the L.A. LOOKS line. One of the manufacturers they contacted at the NACDS convention was Opti–Ray, and both Berglass and Alpin spoke with Paul Peckman, Senior Vice President of Opti–Ray, regarding their intention to expand the L.A. LOOKS product line to include sunglasses and related optical products. They expressed their interest in securing a sunglasses manufacturer to produce sunglasses under a trademark license.

Dep continued to expand the L.A. LOOKS product line by speaking with licensing agencies to assist Dep in its product expansion. Further, Dep has increased the promotion of the L.A. LOOKS marks. In 1988, Dep expended $597,000.00 in advertising and promotion expenses relating to the L.A. LOOKS products; in 1989, that figure increased to $3,513,000.00; and as of

November 1990, the figure had reached $5,374,000.00.

On or about July 13, 1990, Dep entered into an agreement with Janklow & Associates ("Janklow") of Los Angeles, in which Janklow became the exclusive licensing agent for the L.A. LOOKS project. Lawrence Crane, the Chief Executive Officer for the Licensing Division of Janklow contacted and negotiated with various mass merchandising manufacturers on behalf of Dep, including manufacturers of clothing, hair notions, fragrances and cosmetics, and sunglasses. Between July 1990 and October 1990, Crane had held discussions with two sunglasses manufacturers, International Tropic–Cal and Marine Optical, with respect to licensing the L.A. LOOKS mark on sunglasses.

In order to license a mark, the licensor must have exclusivity of ownership, as well as the ability to grant the exclusive right to use the mark in the field of the licensee. If the licensor cannot guarantee exclusivity, the licensing potential for the mark is severely limited.

In late September, 1990, a member of the Dep sales force contacted Berglass about the existence of sunglasses on the market bearing the mark LA LOOK. The mark LA LOOK is affixed to the sunglasses only by means of a paper hangtag attached to the product; the mark is not embossed on or otherwise directly affixed to the sunglasses.

On October 5, 1990, attorneys for Dep placed Opti–Ray on notice of trademark infringement. On October 26, 1990, Dep filed suit against Opti–Ray, Inc. for federal and common law trademark infringement, federal and state unfair competition, and dilution and injury to business reputation under California law.

## II.

## LEGAL STANDARDS FOR GRANTING A PRELIMINARY INJUNCTION

The standards for granting of a preliminary injunction in this Circuit are well established. The moving party must show either probable success on the merits and the possibility of irreparable injury; or that serious questions are raised and that the balance of hardships tips decidedly in the moving party's favor. *Benda v. Grand Lodge of the International Association of Machinists*, 584 F.2d 308, 315 (9th Cir. 1978), *cert. denied*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). This test has been described as encompassing two ends of a single continuum. *Id.* at 315.

## III.

## PROBABILITY OF SUCCESS AND POSSIBILITY OF IRREPARABLE INJURY

A. *The Elements of the Charged Violations*

1. Federal Trademark Infringement

15 U.S.C. Section 1114(1)(a) states:

Any person who shall, without the consent of the registrant—

(a) use in commerce any ... copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; ...

shall be liable in a civil action by the registrant for the remedies hereinafter provided ...

Accordingly, the elements of federal trademark infringement are: (1) ownership of the mark by the plaintiff, (2) use by the defendant without consent by the owner, (3) of a mark which is likely to cause confusion in the marketplace. The element of confusion is determined by whether or not the use of the mark by the defendant has been in a manner likely to confuse the public about the origin, sponsorship, or endorsement of defendant's product. *International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912 (9th Cir. 1980), *cert. denied*, 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981); *Visa International Service Association v. VISA/Master Charge Travel Club*, 213 U.S.P.Q. 629 (N.D.Cal.1981).

**2. Federal Unfair Competition**

15 U.S.C. Section 1125(a) (commonly referred to as § 43 of the Lanham Act) states:

Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, [or] name ... which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ...

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

In order to recover for a violation of Section 1125(a), it is not necessary that a trademark be registered, though protection is available for registered marks under Section 1125(a) as well. *New West Corp. v. NYM Company, Inc.*, 595 F.2d 1194, 1198 (9th Cir.1979). The first person to use a particular name or mark in commerce has ownership rights to that name or mark, regardless of its registration status. *Id.* at 1199–1201. This ownership precludes use by another if it is likely to cause confusion or deception as to the source or origin of the goods offered by the infringing party. *Id.* at 1201.

The ultimate test is whether or not the public is *likely to be confused* or deceived by the similarity of the two marks, and the test is the same for unfair competition under Section 1125(a) as it is for federal trademark infringement under Section 1114. *Accuride International, Inc. v. Accuride Corp.*, 871 F.2d 1531 (9th Cir.1989).

**B. *Ownership of the Trademark***

Ownership of the trademark is acquired by being the first person to use the mark in commerce. *New West*, 595 F.2d at 1199–1201. Here, there is no dispute that Dep is the first user of L.A. LOOKS. Dep began using its marks as early as September, 1987, and Dep obtained a U.S. trademark registration in 1989 for L.A. LOOKS (and design). Further, Dep undertook to expand use of the marks in a line of mass merchandising items including sunglasses, and Opti–Ray knew of Dep's intention to use the mark on sunglasses prior to their adoption of the mark.

**C. *Consent to Use the Mark***

Opti–Ray does not have a license or other consent from Dep to use Dep's marks L.A. LOOKS, nor the formative mark LA LOOK.

**D. *Likelihood of Confusion***

The test of likelihood of confusion is whether the public is likely to be confused or deceived by the similarity of the marks. *New West*, 595 F.2d at 1201. The Ninth Circuit standard for determining whether a likelihood of confusion exists is set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir.1979). In *AMF*, the Court held that "when the goods produced by the alleged infringer compete for sales with those of a trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected." *Id.* at 348.

The products involved in this case do not actually compete for sales, since plaintiff's products are hair care products while defendant is marketing sunglasses. Although plaintiff intends on licensing sunglasses with the L.A. LOOKS mark, it has yet to do so. The marks, however, are sufficiently similar. The marks to be compared are L.A. LOOKS and LA LOOK. The design features of the marks, the overall stylization and the trade dress of the products, including the color scheme, add to the confusion.

The Court in *AMF* further held that "[w]hen the goods are related but not competitive, several other factors are added to the calculus. In determining whether confusion between related goods is likely, the following factors are relevant:

1. Strength of the mark;
2. Proximity of the goods;
3. Similarity of the marks;
4. Evidence of actual confusion;
5. Marketing channels used;

6. Type of goods and the degree of care likely to be exercised by the purchaser;

7. Defendants' intent in selecting the mark; and

8. Likelihood of expansion of the product lines."

*Id.* at 348–49.

### 1. Strength of the Marks

■ Marks are classified on a spectrum from "strong" to "weak" depending upon their distinctiveness. A strong mark is inherently distinctive, for example, an arbitrary or fanciful mark, and is afforded the widest ambit of protection from infringing uses. *Id.* at 349. A descriptive mark tells something about the product; it will be protected only when secondary meaning is shown.[1] *Id.* In between lie suggestive marks which subtly connote something about the products. Although less distinctive than an arbitrary or fanciful mark and therefore a comparatively weak mark, a suggestive mark will be protected without proof of secondary meaning. *Id.*

Dep's L.A. LOOKS mark is probably a suggestive mark when used with hair care products and related merchandising including sunglasses. The term L.A. LOOKS is not the name of the goods and is thus not "generic," nor is it a description of a hair care product or sunglasses and is thus not "descriptive." At most, L.A. LOOKS subtly connotes something positive about the goods, that persons using the hair care products or wearing the sunglasses will attain a desirable image suggestive of being from Los Angeles. It is a relatively strong mark and will be protected without proof of secondary meaning. *Id.*

Opti-Ray argues that the mark is extremely weak, and it supports this contention by analyzing the term "L.A." separate from the term "LOOK." It maintains that "LA" is a "geographically descriptive" term and that "LOOK" is similarly a "descriptive" term. Thus, Opti–Ray contends that proof of secondary meaning is required.

■ First, when determining the strength of trademarks, the marks are to be considered as a whole without dissection into individual components. *In re Geo. A. Hormel & Co.*, 218 U.S.P.Q. 286 (TTAB 1983). A mark which consists of two wholly descriptive components may be "suggestive" when viewed in its entirety if the two components have no meaning in composite. *Id.* at 287. When analysis is required on the part of the purchasers to understand the terms' significance in relation to the product, the term is protectable without proof of secondary meaning as it is no longer "merely descriptive." *Id.* at 287.

Second, composite marks such as L.A. LOOKS cannot be "geographically descriptive" by their very nature. If the mark as a whole does not convey a connotation which is *primarily geographic*, the first test of geographic descriptiveness is not met. *In re Venice Maid Co., Inc.*, 222 U.S.P.Q. 618 (TTAB 1984); *see also* 15 U.S.C. 1052(e)(2).

Because the best conclusion is that the mark L.A. LOOKS constitutes a suggestive term, it should be protected absent proof of secondary meaning.

### 2. Proximity of the Goods

Dep may show relatedness of the goods in two ways. First Dep's hair care products identified in Dep's federal trademark registration must be compared to Opti-Rays sunglasses for purposes of analyzing infringement under Section 1114. Second, under unfair competition under Section 1125(a), Dep's goods to be compared are not limited by the identification of goods in the U.S. registration, but instead includes all goods on which the mark is used even though that use is not the subject of a registration. *New West*, 595 F.2d at 1198.

Indeed, hair care products and sunglasses are not directly competitive goods. Nonetheless, they do travel in the similar

---

**1.** Secondary meaning is an association in the minds of the public between a particular trademark and the goods being offered. *Carter–Wal-*

*lace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794 (9th Cir.1970).

trade channels and they are both "impulse" items. Additionally, it is not uncommon for manufacturers of cosmetic and hair care products to offer merchandising items such as sunglasses under the same trademark. Some popular cosmetics and hair care trademarks which are licensed for use on sunglasses include SEA & SKI, PIERRE CARDIN, VALENTINO, PALOMA PICASSO, LIZ CLAIBORNE and GANT.

The U.S. Patent & Trademark Office Trademark Trial and Appeal Board has held a variety of goods to be "related goods" to hair care and cosmetics items in likelihood of confusion determinations, including women's undergarments; *In re Barbizon International, Inc.*, 217 U.S.P.Q. 735 (TTAB 1983); cosmetics and clothing; *All England Lawn Tennis Club Ltd. v. Creations Aromatiques, Inc.*, 220 U.S.P.Q. 1069 (TTAB 1983); hair treatment products and the manufacture and servicing of hairpieces; *Faberge, Inc. v. Brute Hair Creations Ltd.*, 221 U.S.P.Q. 1199 (TTAB 1984). Likewise, the Trademark Trial and Appeal Board has held that sunglasses are related goods to a variety of products, including clothing, sandals and swimsuits; *Catalina, Inc. v. Miller*, 123 U.S.P.Q. 460 (TTAB 1959); and eyeglass frames; *Ex parte Kono*, 73 U.S.P.Q. 489 (Comr. Patents 1947).

Opti-Ray was fully aware of Dep's intention to use the L.A. LOOKS on sunglasses. Moreover, Dep made efforts to locate an appropriate manufacturer. In fact, Opti-Ray was contacted by Dep for this very purpose. The goods at issue are related such that confusion would be likely.

### 3. Similarity of the Marks

Similarity of the marks is tested on three levels: sight, sound and meaning. *AMF*, 599 F.2d at 351. Although similarity is measured by comparing the two marks in their entirety, similarities weigh more heavily than differences. *Id.* The two marks here are extremely similar as to both sight and sound. The word marks alone are distinguished only by the periods after "L" and "A" (Dep's mark does not, however, employ periods in the script "LA"), and the letter "S" at the end of LOOK. The design features are also similar in that the same color scheme is employed, as well as use of a triangular letter "A." Further, both stylizations employ the letters LA in much larger script than the words LOOKS and LOOK.[2] When the marks are pronounced, the "sound" of the marks are virtually identical.

Opti-Ray argues that a distinction exists between the LA being employed horizontally rather than vertically in the two marks. Dep, however, has also employed the LA portion of the mark horizontally in advertisements prior to the adoption of the mark by Opti-Ray.

Moreover, the marks are identical in meaning or connotation. Even where marks are dissimilar in several respects, a similarity of meaning alone can be the basis upon which to predicate a holding of likelihood of confusion. *Clamp Manufacturing Co., Inc. v. Enco Manufacturing Co., Inc.*, 870 F.2d 512 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 202, 107 L.Ed 2d 155 (1989). In that case, the two marks in question were KANT–TWIST and NO–TWIST. The goods in question were tools known as "C–clamps." This Court had found that the use of the NO–TWIST mark was an act of unfair competition, and a violation of the Lanham Act. The Ninth Circuit upheld the finding on appeal, stating "[c]onfusing similarity may exist if the two terms convey the same idea or meaning." *Id.* at 514.

### 4. Evidence of Actual Confusion

Evidence of actual confusion by customers is not required to sustain a finding of

---

**2.** In its opposition, Opti-Ray originally submitted a declaration from Goldgram, its President, which said that "nothing about Dep was provided" to the graphics design agency and that no products other than the sunglasses were given to the design agency. However, an amendment to the declaration was subsequently submitted which indicates that the design agency president *was* told about Dep's products and "believes he may have seen" a Dep product sheet. Supplemental Goldgram Decl., Para. 3.

likelihood of confusion. *New West*, 595 F.2d at 1201. Here, Opti–Ray's goods have been available for only a short time, and thus, Dep has no evidence of actual confusion.

### 5.  Marketing Channels Used

Dep's hair products and Opti–Ray's sunglasses are both sold through food, drug and mass merchandisers' retail stores. Further, Dep first contacted Opti–Ray at a trade show both parties attended, namely the NACDS industry convention in Florida. The appearance of the products at the same trade shows mitigates in favor of finding likelihood of confusion. *See Accuride International, Inc.*, 871 F.2d at 1537.

Opti-Ray counters with the following claims: (1) Dep manufactures, advertises and distributes only hair care products under the L.A. LOOKS designation; (2) Dep's sales volume places it as a relatively small distributor; and (3) Dep's national retail presence has little cross-over with Opti–Ray's retail placement.

The first contention is true; however, Dep manufactures, advertises and sells numerous products under numerous trademarks, and it filed an "intention to use" registration with the trademark office for the employment of the L.A. LOOKS mark on sunglasses. In terms of the second claim, Dep's annual sales figures for 1990 exceeded $105,000,000.00 wholesale, over twice that of Opti–Ray. Opti–Ray's final argument, that Dep's products will be found in the hair care section while Opti–Ray's products "are displayed in their display racks near other like products," ignores the fact that hair care products and sunglasses are often given similar retail placement within mass merchandising, drug and food chains. Finally, it is less important whether the goods are located side by side as the risk here is one of affiliation or sponsorship. If consumers see the marks in the same trade channels, the risk is increased that they will be confused as to source or sponsorship of the goods.

### 6.  Type of Goods and Degree of Care

Plaintiff credibly argues that the customers who purchase Dep's hair care products and Opti–Ray's sunglasses are unlikely to exercise a high degree of care in purchasing the products. Dep's goods bearing the L.A. LOOKS marks are found in discount drug stores as are sunglasses manufactured by Opti–Ray. Dep's hair care products in the L.A. LOOKS product line cost less than $5.00 retail. The price tag on Opti–Ray's sunglasses which bear the mark LA LOOK indicates the retail price to be $15.00. Additionally, the purchasers of both products are ultimate consumers and are not specialized professionals. The fact that the goods are not expensive goods, coupled with the fact that the average purchasers are not experts, leads to the conclusion that the degree of care exercised by the purchasers will likely be low, increasing the likelihood of confusion. *See Accuride International*, 871 F.2d at 1537.

Opti–Ray responds by stating that the consumers of both are likely to be particular during the selection process; and further, that consumers purchase Opti–Ray sunglasses based upon their reputation. Nonetheless, Opti–Ray concedes that both products are found in discount drug stores and are inexpensive items. This fact, coupled with the fact that the purchasers of both products are not specialized professionals, leads to the conclusion that the degree of care exercised by the purchasers will likely be low. *Id.*

### 7.  Defendant's Intent in Selecting Mark

Although Opti–Ray's intent in selecting the mark LA LOOK is not entirely clear, it is undisputed that Opti–Ray chose the mark with knowledge of Dep's L.A. LOOKS product line and knowledge of Dep's intent to expand its line to include sunglasses. Further, Opti–Ray's adoption of the mark after being offered, and having rejected, a license to use Dep's L.A. LOOKS marks, indicates that defendant may have intended to trade on the goodwill established by Dep in its L.A. LOOKS mark.

■ Although proof of wrongful intent is not required in this action, *Earth Technology Corp. v. Environmental Research & Technology, Inc.,* 222 U.S.P.Q. 585, 588 (C.D.Cal.1983), a knowing adoption and appropriation of a prior user's mark is "entitled to great weight on the issue of the likelihood of confusion." *Hillerich & Bradsby Co. v. Palms Springs Golf Co.,* 215 U.S.P.Q. 680, 694 (C.D.Cal.1982). In *Hillerich,* the court granted summary judgment on the issue of trademark infringement and unfair competition, holding that the defendant's adoption of the mark POWER BOLT on golf clubs infringed the plaintiff's use of POWER BILT on golf clubs. Noting that the defendant was aware of the plaintiff's strong mark upon adoption, the court stated that where the evidence showed that the mark was adopted deliberately to obtain some advantage from the goodwill, then an inference of likelihood of confusion could be drawn:

> This is because the very act of the alleged infringer has indicated that he expects confusion and unjust enrichment to result. Where such a deliberate intent is shown, as in this controversy by the Defendants Swartz and Pro Golf of America, Inc., it in effect raises a presumption that likelihood of confusion exists.

*Id.* at 684.

Thus, Opti–Ray's selection of the mark LA LOOK, with knowledge of the existence of Dep's trademark and its intent to license the mark for sunglasses, as well as Opti–Ray's opportunity to enter into a license agreement with Dep, indicates an intent to obtain some advantage from the goodwill. *See also Novel ID v. Hyman Products, Inc.,* 11 U.S.P.Q. 2d 1138, 1142 (C.D.Cal. 1989) ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived").

8. Likelihood of Expansion of Product Lines

If there is a "strong possibility" that either party may expand their businesses to compete with the other, this weighs in favor of finding that the present use is infringing. *AMF*, 599 F.2d at 354. Here, there is no question that Dep intended to expand its L.A. LOOKS product line to include sunglasses and that Opti–Ray was fully aware of this intention.

In light of the analysis of the above factors, it appears that Opti–Ray has used a mark which is likely to cause confusion, and that Dep is likely to succeed on the merits of its claims.

E. Irreparable Harm

In *Apple Computer, Inc. v. Formula International, Inc.,* 725 F.2d 521, 526 (9th Cir.1984), the Ninth Circuit held that once a trademark owner has shown a likelihood of success on the merits, the resultant loss of control over the trademark and a loss of goodwill associated therewith by the owner of the mark is irreparable injury sufficient to support a preliminary injunction. In other words, there is always irreparable injury when trademark infringement exists. Further, harm is presumed to be irreparable because of the substantial likelihood of public deception and confusion. *Earth Technology Corp.,* 222 U.S.P.Q. at 587.

■ This case presents strong evidence that irreparable injury is occurring. While Opti–Ray continues to use the mark LA LOOK, Dep will not be able to secure a manufacturer of sunglasses as desired. Further, Dep is at the mercy of Opti–Ray in the quality of sunglasses it produces. The scope of injury to Dep is not limited to its inability to market sunglasses, but instead, it extends to every Dep product in that the confusion in this case is one of affiliation, source and approval.

IV.

AMOUNT OF BOND REQUIRED

Federal Rule of Civil Procedure 65(c) requires that security be given by an applicant before a preliminary injunction shall be issued. The applicant must give security "in such sum as the court deems proper for the payment of such costs and damages as may be incurred or suffered by any

party who is found to have been wrongfully enjoined."

The amount of the bond is within the Court's discretion and will not be reviewed on appeal except for abuse of discretion. *Washington Capitols Basketball Club, Inc. v. Barry,* 304 F.Supp. 1193 (N.D.Cal. 1969), *aff'd,* 419 F.2d 472 (9th Cir.1969). The amount will generally be what the court deems sufficient to cover losses and damages incurred or suffered by the party enjoined if it turns out that the injunction should not have been granted.[3] *Id.*

The court finds that a bond in the sum of $50,000.00 is reasonable.

## V.

### CONCLUSION

Based upon the foregoing, this court finds that plaintiff has shown likelihood of success on the merits and possibility of irreparable harm and, therefore, is entitled to a preliminary injunction.

---

**3.** If, after an injunction is issued, unforeseen damages become evident, the enjoined party may seek to have the required security increased. The court has discretion on its own motion or on motion of counsel to increase or decrease the amount of required security. *Id.*