**BAUSCH & LOMB INCORPORATED, Plaintiff,**

v.

**NEVITT SALES CORPORATION d/b/a Solar–Mates Sunglasses, Defendant.**

No. 92–CV–6517L.

United States District Court, W.D. New York.

Jan. 25, 1993.

**468**

William D. Eggers, Nixon, Hargrave, Devans & Doyle, Rochester, NY, for plaintiff.

David B. Newman, Cooperman Levitt & Winikoff, New York City, for defendant.

## DECISION AND ORDER

LARIMER, District Judge.

"Imitation," it has been said, "is the sincerest form of flattery,"[1] but equally true, as this action illustrates, is that flattery will often get you nowhere. In this action, Bausch & Lomb Incorporated ("B & L") charges Nevitt Sales Corporation ("Nevitt Sales") with trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); false designation of origin, unfair competition, and false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law unfair competition; and trademark dilution, N.Y.Gen.Bus.Law § 368–d.

The complaint alleges that Nevitt Sales' Rayex® line of sunglasses infringes on the registered trademarks B & L uses in connection with its Ray–Ban® line of sunglasses (the "Ray–Ban® trademarks") and

Ray–Ban® trade dress, and that Nevitt Sales has engaged in false advertising by claiming that Rayex® sunglasses are identical to or duplicates of Ray–Ban® sunglasses.

B & L now moves for a preliminary injunction pursuant to § 34(a) of the Lanham Act, 15 U.S.C. § 1116(a), and Fed. R.Civ.P. 65, enjoining Nevitt Sales from (1) imitating, copying, or making unauthorized use of B & L's trademarks or trade dress; (2) using any simulation, variation, copy, or colorable imitation or B & L's trademarks in connection with the advertisement or sale of goods in a way that falsely relates Nevitt Sales' products with products manufactured or approved by B & L; (3) advertising that Rayex® sunglasses are duplicates of or qualitative equivalents to B & L's Ray–Ban® sunglasses; and engaging in any conduct that tends to relate falsely Nevitt Sales' products with B & L's products. B & L also moves for an order enjoining Nevitt Sales from filling pending orders that resulted from any false advertising or other infringing conduct, and requiring Nevitt Sales to recall all Rayex® products that infringe on B & L's Ray–Ban® trademarks.

Because I find that Nevitt Sales has clearly infringed B & L's Ray–Ban® trademark in several respects, B & L's motion for a preliminary injunction is granted except as to its request for certain remedial measures which I reserve on pending submission of additional proof.

## BACKGROUND

B & L, a New York corporation, manufactures and sells high-quality sunglasses and ophthalmic lenses under the trademark Ray–Ban®, a trademark which it has been using since the late–1930s. In 1957, B & L registered the Ray–Ban trademark, written in script lettering, with the United States Patent and Trademark Office (which was then the United States Patent Office) for use with sunglasses, shooting glasses, and ophthalmic lenses (Registration No. 650,-

---

1. Charles C. Cotton, 1 *Lacon,* No. 183 (1820–22), *quoted in Bartlett's Familiar Quotations* at 393:5 (Justin Kaplan ed., 16th ed. 1992).

499). Complaint, Ex. A. In 1978, B & L re-registered the Ray–Ban® trademark in both script and block lettering for use with a wider array of ophthalmic products (Registration Nos. 1,080,866 and 1,093,658). *Id.* In December 1983, B & L submitted affidavits attesting to its continuous use over a five-year period of the Ray–Ban® trademarks; the Patent and Trademark Office filed and accepted these affidavits in early 1984. Complaint, Ex. B. The Ray–Ban® trademarks thereby became "incontestable" under the Lanham Act. 15 U.S.C. § 1065.

B & L holds other incontestable registered trademarks, including the marks Wayfarer® (Registration No. 595,513) and Cat® (Registration No. 1,306,874), which are style names of Ray–Ban® sunglasses; G–15 (Registration No. 590,522), which is the style name of a type of lens used in Ray–Ban® sunglasses; and a serrated circle stamp design (Registration No. 1,346,-978), which B & L uses as part of its Ray–Ban® trade dress. Complaint, Ex. B. B & L also holds a registered trademark in the style name Clubmaster® (Registration No. 1,537,975), but the registration for this mark has not yet become incontestable.

Nevitt Sales, which began operating in 1976, imports and distributes sunglasses in the United States and abroad. Recently, it developed a line of ground and polished sunglasses that it intends to market under the trademark Rayex®. Nevitt Sales registered the Rayex® trademark with the United States Patent and Trademark Office on May 12, 1992 (Registration No. 1,686,-161). Affidavit of Milton Nevitt ("M. Nevitt Aff."), Ex. B. The registration covers the name Rayex® written in block letters. Nevitt Sales is currently using the name Rayex® written in a script design as its logo.

Although Nevitt Sales' registration for the Rayex® trademark dates only to May, 1992, the trademark was originally owned by a company named Sunware Products, Inc. ("Sunware"), which received a registration for the name in 1950. Affidavit of Stephen Nevitt ("S. Nevitt Aff.") at ¶ 4. Then, in 1956, the Rayex Corporation, a manufacturer of sunglasses, acquired the rights to the Rayex® trademark. Milton Nevitt, the current President of Nevitt Sales, worked as a manufacturer's representative for the Rayex Corporation between 1952 and 1976, selling Rayex Corporation products, including sunglasses, throughout the country. M. Nevitt Aff. at ¶ 3. The Rayex Corporation ceased doing business in 1976, and its registration for the Rayex® trademark expired on November 28, 1990. Nevitt Sales subsequently submitted an application to register the Rayex® trademark in February 1991; the Patent and Trademark Office approved the application in May 1992.

As originally envisioned by Milton Nevitt, Rayex® sunglasses were intended to be less expensive "duplicates" of B & L's Ray–Ban® sunglasses. Complaint, Ex. H. In a letter to his sales personnel, Nevitt asserted that "[i]n our desire to establish a niche in the sunglass marketplace ... we decided to duplicate the Ray–Ban Sunglass Program. There is absolutely a difference between a duplication and a copy. In a duplication, you do not vary one iota in any phase of the manufacturing." *Id.* Consequently, Nevitt Sales has marketed its Rayex® sunglasses as duplicates of Ray–Ban® sunglasses, and has given retailers and distributors the option of using the slogan "If You Love Ray–Ban, You'll Love Rayex" in point-of-sale displays. Declaration of Kathy Braunstein ("Braunstein Decl.") at ¶¶ 7 & 8. In addition, Nevitt Sales has referred to some of its Rayex® sunglasses styles as duplicates of Wayfarers® or Clubmasters®, or as Cat® style sunglasses. *Id.*

B & L commenced this action on November 16, 1992. Two days later, it filed this motion for a preliminary injunction. The Court heard oral argument on this motion on December 17, 1992, at which time the parties acknowledged that an evidentiary hearing was unnecessary.

## DISCUSSION

A. *Preliminary Injunction Standard Under the Lanham Act*

The standard for granting preliminary injunctive relief in this Circuit is well estab-

lished. "In order to obtain a preliminary injunction, the movant must demonstrate '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly toward the party requesting the preliminary relief.'" *Wallace Int'l Silversmith v. Godinger Silver Art Co., Inc.*, 916 F.2d 76, 78 (2d Cir.1990) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)), *cert. denied*, — U.S. ——, 111 S.Ct. 1622, 113 L.Ed.2d 720 (1991).

■ In a trademark infringement action, however, "assuming that a particular mark warrants protection under the Lanham Act, the requisite likelihood of success on the merits and irreparable harm can both be established by showing a 'likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or … simply confused, as to the source of the goods in question.'" *Western Publishing Co., Inc. v. Rose Art Industries, Inc.*, 910 F.2d 57, 59 (2d Cir.1990) (*quoting Charles of the Ritz Group Ltd. v. Quality King Distributors, Inc.*, 832 F.2d 1317, 1321 (2d Cir.1987)) (alterations in original). Consequently, to succeed on a motion for a preliminary injunction in trademark infringement action a plaintiff must establish only that the trademark is entitled to protection, and that there is a likelihood of confusion.

**B.** *Trademark Infringement under the Lanham Act*

In the responding papers and at oral argument, the parties made several concessions which limit the issues before the Court. In response to this motion, Nevitt Sales has agreed to refrain from using any of B & L's registered trademarks, including the marks Wayfarer®, Cats®, Clubmaster®, G–15®, and the serrated circle stamp design in connection with the sale or marketing of any of its sunglasses products. S. Nevitt Aff. at ¶¶ 19–26. It also agreed to cease claiming that its product is identical to or a duplicate of B & L's Ray–Ban® sunglasses. In addition, B & L stated at oral argument that for purposes of this motion it does not seek to prohibit Nevitt Sales from using the trademark Rayex® entirely, but only to enjoin Nevitt Sales from using the Rayex® trademark written in a script design similar to the Ray–Ban® script design. B & L did, however, reserve the right to pursue a permanent injunction enjoining defendant's use of the Rayex® trademark entirely.

In light of the parties' concessions, the only issue still in contention relative to B & L's trademark infringement claim is whether Nevitt Sales' use of the Rayex® trademark written in a script design infringes on B & L's registered Ray–Ban® script design. I believe that Nevitt Sales' script design does infringe the Ray–Ban® trademark and any further use must be enjoined.

1. *Eligibility for Trademark Protection Under the Lanham Act*

"When assessing the protectable nature of a registered trademark, [courts] first consider its strength." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 170 (2d Cir.1991). *See also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir.1986). A mark's strength is dependent on its distinctiveness. "Marks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, — U.S. ——, ——, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)).

"The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection. In contrast, generic marks—those that 'refe[r] to the genus of which the particular product is a species'— are not registerable as trademarks." *Id.* (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct.

658, 661, 83 L.Ed.2d 582 (1985) (citation omitted)) (alterations in original). Similarly, a descriptive mark may not be registered as a trademark unless it has acquired a distinctiveness referred to as "secondary meaning." 15 U.S.C. §§ 1052(e), (f). *See also Park 'N Fly,* 469 U.S. at 194, 105 S.Ct. at 661. Thus, "[t]he general rule regarding distinctiveness is clear: an identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2758.

■ B & L's script design Ray–Ban® mark is an inherently distinctive mark, and is therefore entitled to trademark protection without B & L having to prove that it has acquired secondary meaning. *See Coach Leatherware,* 933 F.2d at 170. Written in script lettering and at a left-to-right upward slant, it does more than simply describe the qualities of or the materials used in the product that it identifies. At most, it only suggests the type of product that it was meant to identify. It is, in my opinion, unlikely that a consumer, unfamiliar with the Ray–Ban® name and hearing it for the first time, would immediately identify the name with a pair of sunglasses.

That the words "ray" and "ban" are descriptive when read separately, does not diminish the distinctiveness of the Ray–Ban® mark read as a whole. A trademark must be viewed in its entirety, and not in its component parts. *See In re Hutchinson Technology Inc.,* 852 F.2d 552, 554 (Fed.Cir.1988) ("[A] mark sought to be registered must be considered in its entirety."); *Dep Corp. v. Opti–Ray, Inc.,* 768 F.Supp. 710, 714 (C.D.Cal.1991) ("[W]hen determining the strength of trademarks, the marks are to be considered as a whole without dissection into individual components."). In this case, when the two descriptive words "ray" and "ban" are joined together by a hyphen, they gain a new meaning, one that is only suggestive of the product the name identifies. *Cf. Banff, Ltd. v. Federated Dept. Stores, Inc.,* 841 F.2d 486, 489 (2d Cir.1988) ("[T]he mark 'Bee Wear' combines both an arbitrary and a generic term, resulting in a suggestive or arbitrary mark entitled to copyright protection.").

In addition, because the mark is incontestable, 15 U.S.C. § 1065, it is entitled to significant trademark protection.[2] *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 871 (2d Cir.1986). Nevitt Sales does not challenge the mark's incontestability on any of the grounds enumerated in §§ 15 and 33(b) of the Lanham Act.

In sum, I find that B & L's script design Ray–Ban® mark is entitled to protection under both § 32(1) and § 43(a) of the Lanham Act. Accordingly, to prevail on its claim of trademark infringement B & L need only establish a likelihood of confusion.

### 2. *Likelihood of Confusion*

■ "Presumptions of differing weight govern determination of the likelihood of confusion issue with regard to registered trademarks as opposed to unregistered trade dress. When engaging in this inquiry, registered marks are 'entitled to a liberal application of the law.'" *Coach Leatherware,* 933 F.2d at 170 (quoting *Lois Sportswear,* 799 F.2d at 871).

In deciding whether there is a likelihood of confusion, "[a] nonexclusive list of eight factors ... helps guide this inquiry: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the competitive proximity of the products or services; (4) the existence of actual confusion; (5) the likelihood that the plaintiff will 'bridge the gap' between the two markets; (6) the defendant's good faith in adopting the mark; (7) the quality of the defendant's product; and (8) the sophistication of the purchasers." *Mobil Oil Corp.*

---

**2.** "Five years after registering a mark, the holder may file the affidavit required by § 1065 and have its mark declared 'incontestable.'" *Dieter v. B & H Industries of Southwest Florida,* 880 F.2d 322, 328 (11th Cir.1989), *cert. denied,* ——

U.S. ——, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990). B & L filed the necessary affidavit and the mark became incontestable in February, 1984. Complaint, Ex. B.

*v. Pegasus Petroleum Corp.*, 818 F.2d 254, 256 (2d Cir.1987) (citing *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961)). These factors are commonly referred to as the *Polaroid* factors.

The Second Circuit has advised that when balancing the various *Polaroid* factors, it is important to keep in mind that "each factor must be evaluated in the context of how it bears on the ultimate question of likelihood of confusion as to the source of the product.... [T]he ultimate conclusion as to whether a likelihood of confusion exists is not to be determined in accordance with some rigid formula." *Lois Sportswear*, 799 F.2d at 872 (citation omitted). The Court also noted that it is helpful to first "determine just what type of actionable confusion as to source is presented." *Id.*

B & L contends that confusion will arise from Nevitt Sales' use of the Rayex® mark written in script lettering because consumers are likely to be confused or misled by the Rayex® mark, thinking that the Rayex® products are somehow associated with Ray–Ban® products. This type of confusion, if established, is actionable under the Lanham Act. "[T]he Lanham Act was designed to prevent a competitor from such a bootstrapping of a trademark owner's goodwill by the use of a substantially similar mark." *Lois Sportswear*, 799 F.2d at 872. *See also Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir.1979) (the public's belief that the mark's owner sponsored or otherwise approved of the use of the trademark satisfies the confusion requirement); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331, 1342 (2d Cir.1975) (the harm to the trademark owner is the likelihood that a consumer, hearing the Grotrian Steinweg name and thinking it had some connection with Steinway would consider the product on that basis). Consequently, I must balance the *Polaroid* factors "with an eye to how they bear on the likelihood that [defendant's] use of [a script design trademark] will confuse customers into

thinking that [plaintiff] is somehow associated with [defendant] or has consented to their use of the [script design trademark] regardless of labeling." *Lois Sportswear*, 799 F.2d at 872.

After balancing the eight *Polaroid* factors, I find that B & L has established a likelihood of confusion, and therefore an injunction should issue.

The first factor—the strength of the mark—weighs strongly in favor of B & L. "[T]he strength of a mark depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public.'" *Western Publishing*, 910 F.2d at 61 (quoting *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979)). Evaluated under this standard, the script-design Ray–Ban® mark is a strong mark. As discussed above, *see supra* p. 471, the Ray–Ban® mark is a suggestive mark, and as such, it is inherently distinctive.

In addition, both the commercial success of Ray–Ban® sunglasses, and the high-profile endorsements and sponsorships used to advertise Ray–Ban® sunglasses reinforces the conclusion that the mark is strong. *See Charles of the Ritz*, 832 F.2d at 1321. B & L has used the mark in connection with sunglasses for over fifty years. Affidavit of Neil Mahoney ("Mahoney Aff.") at ¶ 3. During this period the popularity of Ray–Ban® sunglasses has grown considerably. Currently, B & L's worldwide annual revenue from the sale of sunglasses is approximately $500 million, the majority of which is attributable to its Ray–Ban® line. Mahoney Aff. at ¶ 4. B & L also has been successful in attracting sports and entertainment stars, such as M.C. Hammer, Jackie Joyner–Kersee, A.J. Kitt, Danny Sullivan, Matt Biondi, and Gabriella Sabatini, to promote its Ray–Ban® sunglasses. *Id.* at ¶ 10. Furthermore, in 1992, B & L was a sponsor of the Olympic games and Ray–Ban® sunglasses were named the official sunglasses of the 1992 games. *Id.* at ¶ 13.

That other manufacturers and distributors of sunglasses use the word "ray" in

their names or the names of their sunglasses does not diminish the strength of the Ray–Ban® mark. Significantly, every company other than Nevitt Sales, that uses the word "ray" in its name, uses it as a suffix and not as a prefix. *Cf. Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.,* 687 F.2d 563, 568–69 (2d Cir.1982) (finding it significant that no other adult male magazines aimed at heterosexual men used the word "Play" in its prefix). Moreover, at issue in this motion is not merely whether Nevitt Sales' use of the word "ray" in the name of its sunglasses will cause confusion, but whether the appearance and style of the Rayex® mark, as compared to the appearance and style of the Ray–Ban® mark, is likely to cause confusion. Consequently, it is the overall appearance of the Rayex® mark that is at issue. *See Dep Corp.,* 768 F.Supp. at 714. When the Ray–Ban® mark is considered in its entirety it is clear that it is a strong mark, entitled to significant trademark protection.

The second factor—the degree of similarity—also weighs in B & L's favor. While it is relevant that both marks begin with the prefix "ray," even more significant is that both are written in script letters and are positioned at the same upward left-to-right slant. Use of similar lettering or typeface is an important factor to consider in determining the similarity of the marks. *See Banff, Ltd. v. Federated Dept. Stores, Inc.,* 638 F.Supp. 652, 656 (S.D.N.Y. 1986) ("[S]imilarity of typefaces must be considered as aggravating the similar impression generated by the two closely worded labels"). *Cf. Grotrian, Helfferich,* 523 F.2d at 1339 (district court failed to account for the wholly different type faces of the two marks). The script lettering and the upward slant give the marks a similar appearance, such that when viewed in light of the strength of the Ray–Ban® mark, it is likely that consumers will be confused as to the source of the Rayex® sunglasses. *See Lois Sportswear,* 799 F.2d at 873; *Playboy Enterprises,* 687 F.2d at 568 (defendant's "Playmen" infringed on plaintiff's "Playboy" trademark); *Coach Leatherware,* 933 F.2d at 170 (although defendant's tags contained different name, they were confusing similar to plaintiff's tags in look and feel).

Defendants contend that the two marks—and their respective products—are easily distinguishable when viewed side-by-side because the trademarks end in different suffixes, and the marks are clearly visible on the sunglasses. That the two marks and products may be distinguishable upon close inspection when viewed together is wholly irrelevant to this analysis; " '[t]he test is not whether the consumer will know the difference if [s]he sees the competing products on the same shelf. It is whether [s]he will know the difference if [defendant's product] is *singly* presented and [s]he has heard of [plaintiff's product].' " *Spring Mills, Inc. v. UltraCashmere House, Ltd.,* 689 F.2d 1127, 1133 (2d Cir.1982) (quoting *American Home Products Corp. v. Johnson Chemical Co., Inc.,* 589 F.2d 103, 107 (2d Cir.1978)) (alterations in original). *See also Paco Rabanne Parfums, S.A. v. Norco Enterprises, Inc.,* 680 F.2d 891, 893 (2d Cir.1982).

Moreover, that B & L's trademark ends in the suffix "ban" and Nevitt Sales' trademark ends in the suffix "ex" does not alter the result. *See Harold F. Ritchie, Inc. v. Chesebrough–Pond's, Inc.,* 281 F.2d 755, 760 n. 8 (2d Cir.1960) ("[D]issimilar prefixes combined with generic or descriptive suffixes have often been found to infringe."); *Q–Tips, Inc. v. Johnson & Johnson,* 206 F.2d 144, 147–48 (3d Cir.) ("Cotton tips" held to infringe on "Q-tips"), *cert. denied,* 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 (1953). Indeed, in *Harold F. Ritchie,* the Second Circuit found that defendant's trademark "Valcream" infringed on plaintiff's trademark "Brylcreem" and in so doing noted that "the District Court should have considered the names of the two products in conjunction with the similarity of the presentation of the products with respect to their design and general appearance, containers, tubes, price, size, perfume, and other non-functional aspects." *Harold F. Ritchie,* 281 F.2d at 760. When the script design Rayex® trademark is considered along with the similarity be-

tween the styles of sunglasses marketed by and trade dress used by both B & L and Nevitt Sales, it is clear that the two marks create a similar impression, and that use of both could cause consumer confusion.

The third factor—proximity of the products—also weighs in B & L's favor. "The concern here is whether 'it is likely that consumers mistakenly will assume either that [the junior user's goods] are associated with [the senior user] or are made by [the senior user].'" *Charles of the Ritz,* 832 F.2d at 1322 (quoting *Lois Sportswear,* 799 F.2d at 874) (alterations in original). Significantly, both plaintiff's and defendant's products are sunglasses. That should end the inquiry on this factor. Nevitt Sales contends that confusion is unlikely, however, because the two lines of sunglasses are not in direct competition; Ray-Ban® sunglasses, defendant argues, are high-priced sunglasses, often retailing for more than $100, while Rayex® sunglasses retail for less than $20. S. Nevitt Aff. at ¶ 30. *See also* Affidavit of Russell Guccione ("Guccione Aff.") at ¶ 6 ("Ray-Ban products are more expensive than Rayex products ...."). But, this does not solve the problem, it exacerbates it. As the Second Circuit noted in *Lois Sportswear,* this fact makes the likelihood of confusion *more* not less likely:

> Moreover, even if the two jeans are in different segments of the jeans market, such a finding would not switch this factor to appellants' side of the scale.... The fact that appellants' jeans arguably are in a different market segment makes this type of confusion *more likely.* Certainly a consumer observing appellee's striking stitching pattern on appellants' designer jeans might assume that appellee had chosen to enter that market segment using a subsidiary corporation, or that appellee had allowed appellants' designers to use appellee's trademark as a means of reaping some profits from the designer jeans fad without a full commitment to that market segment.

*Lois Sportswear,* 799 F.2d at 874.

A similar potential for confusion exists in this case. A consumer shopping for an inexpensive pair of sunglasses may very well believe upon seeing a pair of Rayex® sunglasses, with its script design logo, that Ray-Ban® had entered the lower-end sunglasses market and that by purchasing a pair of Rayex® sunglasses she was purchasing a pair of sunglasses made or authorized by the same company that makes Ray-Bans®. In fact, in at least one store in Texas, Rayex® sunglasses were being displayed in a display case directly behind a case which contained Ray-Ban® sunglasses. Declaration of Richard Scott ("Scott Decl.") at ¶ 3.

When the similarity between the styles of sunglasses manufactured by both parties and the possibility that their sunglasses may be displayed in the same store are considered together, it becomes apparent that the competitive distance between the two products is narrow at best. Indeed, in this day and age when businesses are expanding there product base to capture a larger market share, it is quite likely that consumers seeing Rayex® sunglasses could believe that the product is simply a different, albeit less-expensive, line of Ray-Ban® sunglasses. *See Spring Mills,* 689 F.2d at 1134.

The evidence concerning the fourth factor—actual confusion—is scant. The only evidence B & L has submitted of actual confusion is a copy of the affidavit of Dana Graves ("Graves Aff."), an affidavit B & L submitted in an infringement action it initiated against Nevitt Sales in the Federal Court of Canada. According to Graves, while she was shopping in a drug store in Vancouver, British Columbia, "[a] sales clerk who identified himself as Mr. Geronimo showed me a number of pairs of sunglasses from the showcase and told me that the RAYEX sunglasses and the RAY-BAN sunglasses 'were made by the same company with a different quality of lens.'" Graves Aff. at ¶ 6, *located in* Declaration of Jon O. Webster ("Webster Decl."), Ex. A.

However, B & L need not establish actual confusion to prevail on this motion; "[t]o warrant injunctive relief, plaintiff[ ] [is] not required to establish unquestioned confu-

sion but a mere *likelihood* of it...." *Coach Leatherware*, 933 F.2d at 171. It has established that likelihood to my satisfaction.

The fifth factor—bridging the gap—neither helps nor hurts B & L's case. B & L has offered no evidence that it plans to enter the low-end sunglasses market. However, the barrier between the two market segments—high-end and low-end sunglasses—is sufficiently "porous" that it certainly is not inconceivable that B & L may one day attempt to market an inexpensive version of its Ray–Ban® sunglasses. *Cf. Charles of the Ritz*, 832 F.2d at 1322 ("barrier between the two [markets] is sufficiently porous to allow Charles of the Ritz passage with little difficulty.").

The sixth factor—defendant's good faith—weighs strongly in favor of B & L. There is overwhelming evidence that Nevitt Sales launched its Rayex® line of sunglasses in an attempt to "duplicate" B & L's Ray–Ban® line in both appearance and manufacturing. It is not disputed that Nevitt Sales was aware of B & L's Ray–Ban® line of sunglasses, or that it initially marketed its Rayex® sunglasses to distributors as "duplicates" of Ray–Ban® sunglasses. *See* Complaint, Exs. C, D, and H; Braunstein Decl. at ¶¶ 5, 8, and 9. What is most troubling, however, is that despite the availability of numerous other lettering styles—e.g. block lettering or old English—Nevitt Sales chose a script style virtually identical to the script style used in the Ray–Ban® logo. In my view, this strongly suggests that Nevitt Sales intended to associate its Rayex® sunglasses as closely as possible with Ray–Ban® products.

■ A second-comer, such as Nevitt Sales, has an obligation to name and dress its product to not cause confusion with another established mark. *Harold F. Ritchie*, 281 F.2d at 758; *Playboy Enterprises*, 687 F.2d at 569. The fact that Nevitt Sales developed a mark both similar in sound and appearance to the Ray–Ban® trademark, and it's failure to offer an innocent explanation for its decision both work to create a strong presumption that defendant acted in bad faith in adopting its script Rayex® logo. *See Spring Mills*, 689 F.2d at 1134–36.

The seventh factor—quality of the products—lends some support to Nevitt Sales' claim that consumers will not likely be confused. According to David Sears, the Vice President of Research, Development and Engineering for the Eyewear Division at B & L, who supervised the testing of four pairs of Rayex® sunglasses, "none of the lenses approached the quality of the RB–3 and G–15® lenses used in Ray–Ban® sunglasses." Declaration of David Sears dated November 13, 1992 ("First Sears Decl.") at ¶ 6. Specifically, the tests revealed that three of the four lenses were too dark to meet American National Standards Institute ("ANSI") standards and three of the four lenses allowed in ten times more ultraviolet light than Ray–Ban® lenses. *Id.* In addition, according to Sears, the Rayex® frames "were far inferior to the Ray–Ban® sunglass frames." *Id.* at ¶ 7. Accepting plaintiff's own assessment of the relative quality of Rayex® and Ray–Ban® sunglasses as true, "the marked difference in quality lessens the likelihood of consumers misapprehending the source of either product." *Charles of the Ritz*, 832 F.2d at 1323.

Finally, the eighth factor—sophistication of the purchasers—weighs in B & L's favor. The consumers who purchase Ray–Ban® sunglasses, are likely to be a diverse group of consumers, ranging from sophisticated and educated consumers to fashion-conscious, impulse buyers. However, even if I assume that the average Ray–Ban® purchaser is a sophisticated consumer, that fact alone does not diminish B & L's claim for injunctive relief. In fact, having a sophisticated consumer base is likely to weigh in favor of B & L for presumably it is the sophisticated consumer who gives the greatest weight to the Ray–Ban® name and who may be swayed by an erroneous belief that Rayex® sunglasses are associated with Ray–Ban® sunglasses. *See Coach Leatherware*, 933 F.2d at 170.

After balancing the *Polaroid* factors—with an eye toward the ultimate question of whether an ordinarily prudent consumer

would likely be confused or misled into believing that Rayex® sunglasses are associated with Ray–Ban® sunglasses—I find that B & L has established a likelihood of confusion, and therefore that preliminary injunctive relief enjoining Nevitt Sales' use of the script design Rayex® trademark is clearly warranted.

## C. *False Designation of Origin and Unfair Competition Under the Lanham Act*

■ The extent of Nevitt Sales' infringement, and plaintiff's corresponding need for injunctive relief become even clearer after examining the similarity between the trade dress used by B & L and Nevitt Sales. B & L uses several elements as part of its Ray–Ban® trade dress: (1) imprinted on the right lens of many of its sunglasses styles is the script design Ray–Ban® trademark; (2) affixed to almost every pair of Ray–Ban® sunglasses is a serrated circle sticker identifying the product as a Ray–Ban®; (3) attached to every pair of Ray–Ban® sunglasses is a hang tag with a gold background and black letters identifying the product as a Ray–Ban® and proclaiming that Ray–Ban® are "the world's finest sunglasses;" and (4) imprinted on the leather carrying case used by B & L is the image of its serrated circle design. Complaint, Ex. F.

Nevitt Sales also uses several elements as part of its Rayex® trade dress, all of which are strikingly similar, if not virtually identical, to B & L's Ray–Ban® trade dress. These elements are as follows: (1) imprinted on the left lens of most pairs of Rayex® sunglasses is the script design Rayex® mark; (2) affixed to the lens of almost every pair of Rayex® sunglasses is a serrated circle sticker using the same black background and gold trim and lettering as B & L's registered serrated circle design; (3) attached to every pair of Rayex® sunglasses is a hang tag with a white background and the script design Rayex® mark and the slogan "the best sunglasses money can buy" emblazoned

across it in gold lettering; and (4) imprinted on the leather carrying case used by Nevitt Sales is a circular pattern logo with the script design Rayex® mark written in it. Complaint, Ex. F.

■ B & L charges Nevitt Sales with trade dress infringement alleging that defendant intentionally imitated the gold tags, the serrated circle lens sticker, the script logo in the upper corner of the lens ("script lens logo"), and the distinctive leather carrying case. "The 'trade dress' of a product, which 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, [or] graphics,' may become an unregistered trademark eligible for protection under § 43(a) if it is nonfunctional and has acquired a secondary meaning[3] in the marketplace by which it is identified with it producer or source." *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985) (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir.1983)). If a particular trade dress is eligible for protection, to prevail on a claim of trade dress infringement a plaintiff must demonstrate a likelihood of confusion as to the source of defendant's products. In this case, however, there is no need to find separately whether plaintiff's trade dress is entitled to protection and whether there is a likelihood of confusion.

Based on my earlier discussion of trademark infringement, I also find that the trade dress adopted by Nevitt Sales to identify its Rayex® products infringes on B & L's Ray–Ban® trade dress and trademarks. In this case plaintiff's claims of trademark and trade dress infringement are, in essence, one and the same. It is clear that plaintiff's trade dress claim is aimed not at the generic or descriptive aspects of the Rayex® trade dress—i.e. the script lens logo, hang tags, and leather carrying case—but rather at defendant's use of trade dress which contains trademarks similar to the Ray–Ban® trademarks. Indeed, were plaintiff's claim tar-

---

**3.** Where the trade dress at issue is inherently distinctive, however, proof of secondary meaning is not required. *Two Pesos*, —— U.S. at ——, 112 S.Ct. at 2761.

geted at the generic or descriptive aspects of the Ray–Ban® trade dress, they would likely fail.[4]

■ However, in an action for trade dress infringement, as in an action for trademark infringement, the elements of the trade dress must be evaluated in their entirety and not separately. *See LeSportsac*, 754 F.2d at 76 (holding not erroneous district court's finding that design of bag must be viewed in its entirety and not as separate features such as zipper pulls or carpet tape trim). In this case, the generic and descriptive aspects of B & L's Ray–Ban® and Nevitt Sales' Rayex® trade dress cannot be separated from the fact that each element of the both parties' trade dress contain their respective trademarks as integral parts of the design.

Consequently, to the extent that Nevitt Sales is enjoined from using the script design Rayex® mark and has agreed to refrain from using the serrated circle stamp, it is also enjoined from using trade dress—including the script lens logo, the gold hang tag, and leather carrying case—that employs the script design Rayex® mark or serrated circular seal in it.

■ B & L also seeks to enjoin defendant from using the slogan "if you love Ray–Ban®, you'll LOVE Rayex®" ("like/love slogan") to advertise its products on the grounds that it will cause consumer confusion. In assessing whether use of such a slogan will likely cause consumer confusion "courts do not focus solely on the 'like/love' slogan but on the overall context in which that phrase appears." *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 668 (8th Cir.1987). In short, courts must balance the various *Polaroid* factors as they relate to this issue. *Charles of the Ritz*, 832 F.2d at 1321. In light of my foregoing discussion concerning trademark and trade dress infringement, and after considering the *Polaroid* factors, I find that Nevitt Sales' use of the like/love slogan will likely exacerbate consumer confusion. *Cf. Charles of the Ritz Group, Ltd. v. Quality King Distributors, Inc.*, 636 F.Supp. 433 (S.D.N.Y. 1986) (package which contained statement "if you like Opium you'll love Omni" was likely to cause consumer confusion as to source of product). Consequently, Nevitt Sales is enjoined from using the slogan to advertise its Rayex® sunglasses.

### D. *Laches*

■ Nevitt Sales contends that B & L's request for preliminary injunctive relief should be denied because it is barred by laches.[5] "Significant delay," the Second Circuit has stated, "in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985). Defendant, relying on *Citibank*, contends that because the Rayex® mark had been used in connection with sunglasses for over forty years, and because B & L knew that defendant intended to register the name Rayex®, B & L should have been aware of the alleged infringing activities long before it initiated this action.

I find little merit in defendant's contention. Significantly, defendant offers no evidence to suggest that plaintiff knew of Nevitt Sales' intent to use a script Rayex® logo, or to market "duplicates" of Ray–Ban® sunglasses. That B & L knew that

---

4. "The trade dress of a product attains secondary meaning when the purchasing public 'associates' its design with a single producer or source rather than simply with the product itself." *Coach Leatherware*, 933 F.2d at 168. Evaluated as generic or descriptive aspects of trade dress neither the leather carrying case, script lens logo, or gold tags are inherently distinctive, nor have they acquired secondary meaning.

5. "In order to establish the defense of laches, a defendant has the burden of demonstrating 'that plaintiff had knowledge of defendant's use of its marks, that plaintiff inexcusably delayed in taking action with respect thereto, and that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time.'" *West Indian Sea Island Cotton Ass'n, Inc. v. Threadtex*, 761 F.Supp. 1041, 1051 (S.D.N.Y. 1991) (quoting *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir.1980)).

defendant was planning to register the Rayex® mark and that the Rayex® name has been used for over forty years are irrelevant to this motion. At this juncture, B & L seeks only to preliminarily enjoin defendant from using the script design Rayex® mark and other registered trademarks owned by B & L, and from engaging in false advertising. It does not seek to enjoin defendant's use of the Rayex® mark entirely. Thus, whether plaintiff is barred by laches depends on when it discovered that defendant was using the script design Rayex® and possibly infringing on B & L's registered trademarks, and not on its general knowledge of the existence of the Rayex® mark.

B & L contends that it first discovered that defendant may have been infringing on its Ray–Ban® trademarks in October, 1992, after receiving a Rayex® sales kit from its Canadian subsidiary. Webster Decl. at ¶ 2. Soon thereafter, B & L hired an independent trademark investigator, Kathy Braunstein, to investigate the alleged violations. *Id.* at ¶ 4. After receiving a report from Braunstein, B & L sent a cease and desist letter dated November 10, 1992 to Nevitt Sales. *Id.;* Complaint, Ex. G. Because no response was received, B & L subsequently commenced this action on November 16, 1992. Defendant offers no evidence to rebut these declarations. There is no laches here.

### E. *Remedial Measures*

In addition to injunctive relief enjoining defendant from infringing on Ray–Ban® trademarks, B & L also seeks to enjoin Nevitt Sales from filling pending orders that resulted from false advertising or other infringing conduct, and an order requiring Nevitt Sales to recall all Rayex® sunglasses that infringe on B & L's Ray–Ban® trademarks. B & L contends that absent such relief, it will suffer irreparable harm, because of likely confusion, to its reputation.

With respect to the request for an injunction on pending orders, this order covers all infringing products currently in defendant's possession which have not yet been shipped to retail or wholesale customers, including those products that it intended to use to fill pending orders. To the extent that Nevitt Sales can meet its orders with non-infringing products—e.g. sunglasses, trade dress, and packaging that do not have the script design Rayex® or B & L's registered trademark imprinted on it—it may do so only after notifying the buyers of this injunction. If distributors and retailers still want to purchase non-infringing Rayex® products, then it is the Rayex® product itself and not its association with B & L's Ray–Ban® sunglasses that is the basis for those sales.

With respect to B & L's request for a recall order, the record is incomplete and contains conflicting evidence concerning the number of Rayex® sunglasses currently in the marketplace.[6] As such it is impossible to properly balance the competing hardships caused by the granting or denial of a recall order. *See generally Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.,* 646 F.2d 800, 807 (2d Cir.1981) ("a district court should carefully consider the likely burden and expense of a recall before it imposes the remedy.").

### CONCLUSION

If the remaining matters cannot be resolved, the parties are directed to advise the Court in writing within twenty (20) days of how they intend to proceed on the recall issues (e.g., live testimony, affidavit, oral argument), whether discovery will be necessary, and a proposed schedule for completing this portion of the case. A stipulated order is preferable. Depending on the submissions, the Court will either conference with counsel or issue its own scheduling order.

It is the intent of this decision, though, that the injunctive relief granted here, in-

---

**6.** According to Nevitt Sales, it has already distributed approximately 46,000 pairs of sunglasses. S. Nevitt Suppl. Aff. at ¶¶ 3 & 4. Plaintiff, however, contends that defendant has dis-tributed far fewer, and that there is currently a pending order for 30,000 sunglasses that defendants have not yet shipped.

cluding those items disposed of by consent, is to be effective immediately upon entry of this decision and Bausch & Lomb should submit to the Court a proposed judgment (agreed upon as to form by Nevitt Sales) reflecting this decision for immediate entry.

IT IS SO ORDERED.